No. 13445

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

ROBERT W. MILLER,

Plaintiff and Appellant,

-vs-

FLOYD FOX,

Defendant and Respondent.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable M. James Sorte, Judge presiding.

Counsel of Record:

For Appellant:

Robert Hurly argued, Glasgow, Montana

For Respondent:

William J. McCarvel argued, Spokane, Washington

---

Submitted: October 7, 1977

Decided: NOV 21 1977

Filed: NOV 21 1977

Thomas J. Kearney
Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Plaintiff Robert Miller sued defendant Floyd Fox in District Court, Valley County, for the unpaid balance on a contract for the sale of horses. Plaintiff obtained a writ of attachment against defendant's property. Defendant posted a cash bond for release of the attachment and counterclaimed on various grounds including wrongful attachment. After a nonjury trial, District Judge M. James Sorte found that there had been no breach of contract by defendant and that plaintiff had wrongfully attached defendant's property. Judge Sorte awarded defendant $400 in exemplary damages for plaintiff's wrongful attachment.

In the spring, 1966, defendant, a resident of Cardston, Alberta, made an oral agreement with plaintiff at plaintiff's ranch near Jordan, Montana, for plaintiff to sell five horses to defendant. In April, 1966, plaintiff delivered the five horses to defendant at his farm in Cardston. Defendant accepted all five horses as satisfactory and made part-payment, with a balance on the contract remaining unpaid.

Three of the horses were geldings, valued at $500 each, to be used for general purposes. A fourth gelding, later used as a race horse, was sold for $600. The fifth horse was a stud horse, sold for $1,500 (plaintiff's version) or for $1,200 (defendant's version). The remaining unpaid balance for the horses was approximately $1,700. Plaintiff did not deliver the registration certificate for the stud horse, and both plaintiff and defendant testified that without the certificate the stud horse was valueless to defendant for either breeding or racing.

In the fall, 1966, plaintiff sent defendant a letter asking for the balance of his money. Defendant, in the fall, 1966, wrote plaintiff a letter and, on more than one occasion tried to telephone him, all without success. During 1966, and until 1968,

- 2 -

plaintiff resided at Jordan, had a telephone there, and received mail there. Defendant did not contact plaintiff nor offer him any payment during that time.

In late June (defendant's version) or early July (plaintiff's version) 1968, plaintiff found defendant at a horse race in Fort Benton, racing the gelding race horse plaintiff had sold him. Defendant voluntarily returned the gelding to plaintiff whereupon plaintiff credited $600 to defendant's account. Defendant, at the time of the original horse delivery in Cardston, had paid plaintiff an amount equal to the price of three general purpose geldings; when defendant returned the gelding race horse, the only amount due under the contract was the price of the stud horse. Defendant testified that when he saw plaintiff at Fort Benton he asked plaintiff to travel to defendant's farm in Cardston to choose cattle to take in satisfaction of the contract balance. Defendant further testified that he had the cows on hand for plaintiff to select; or, if plaintiff preferred, defendant could have sold the cows and paid plaintiff in cash. Defendant alleges plaintiff never traveled to Cardston to pick out his cows or receive his cash.

After their Fort Benton meeting in 1968, defendant did not again contact plaintiff and offer to pay the balance of the contract price. Defendant, however, testified that he tried to contact plaintiff in both Jordan and Roundup, Montana, but nobody there knew plaintiff's whereabouts. Defendant's testimony on this point was consistent with plaintiff's statements at trial that, starting in 1968, plaintiff lived in California for about 1-1/2 years. During that time, plaintiff never tried to contact defendant to inform him of his new address.

In 1971, plaintiff learned that defendant was in Glasgow, Montana, for a horse race. Plaintiff filed suit against defendant in District Court, Valley County, obtained a writ of attachment,

and attached defendant's pickup truck, camper, four-horse trailer, and horses. Defendant, who was accompanied by his wife and daughter, was served with the attachment papers in front of the grandstand at Glasgow, in view of the race crowd. Defendant had to stay in Glasgow for about four days to make travel arrangements and to wait for money to be sent from his bank in Cardston.

The district judge found that presentation of a certificate of registration by plaintiff to defendant was a condition precedent to defendant's obligation to pay the remainder due under the contract. The judge held that defendant did not breach his contract with plaintiff since plaintiff never produced the registration papers, and frustrated defendant's performance by not apprising defendant of his whereabouts during his protracted absences from his ranch near Jordan. Defendant thus never had a duty to tender payment. The judge noted that the "Plaintiff's Affidavit in support of his Writ of Attachment stated that the contract between the parties called for a direct payment of money * * *." Because the judge concluded that plaintiff, when he submitted his affidavit, knew that the contract did not call for "direct payment of money", but rather, required further performance (presentation of registration papers) as a condition of payment, he awarded defendant exemplary damages for plaintiff's wrongful attachment.

Plaintiff raises the following issues on appeal:

1. Was tendering stud registration papers a condition precedent, failure of which would bar plaintiff from recovering under the contract?

2. Did plaintiff wrongfully attach defendant's property?

3. Did the district court err in awarding defendant exemplary damages?

- 4 -

The specific terms of an oral contract must be determined by the trier of fact where the parties to the contract present conflicting statements and opinions. See, Waite v. C.E. Shoemaker & Co., 50 Mont. 264, 285, 146 P. 736 (1915). In this case, plaintiff testified that he and defendant agreed that plaintiff would retain the stud registration papers until defendant fully paid the contract purchase price. Defendant, however, testified that the agreement was that plaintiff would keep the stud registration papers until final payment only if plaintiff first showed the papers to defendant. Defendant stated that plaintiff agreed to send the stud registration papers to defendant, but refrain from transferring ownership until defendant tendered final payment. Both plaintiff and defendant agreed that plaintiff never did produce the stud registration papers before trial, and defendant testified that " * * * I would have been glad to pay him but I got kind of leary because the papers were not there, he wouldn't show them to me. I just wanted to see them."

From these conflicting versions presented by plaintiff and defendant as to the terms of their contract, the trial judge chose to believe defendant and ruled "That the parties agreed at that time that the Defendant would pay the remaining balance due in the fall upon presentation of a certificate of registration." This Court must sustain the trial judge's ruling on this point.

> " * * * The credibility and weight given the
> witnesses, however, is not for this Court to
> determine. This is a primary function of a
> trial judge sitting without a jury; it is of
> special consequence where the evidence is con-
> flicting. (Citations omitted)." Hellickson v.
> Barrett Mobile Home Transport, Inc., 161 Mont.
> 455, 459, 507 P.2d 523 (1973).

Because the trial judge found that plaintiff's presentation of a stud horse certificate of registration was a condition

precedent to defendant's duty to pay the balance, the failure of plaintiff to present the certificate at any time before trial meant that defendant never before trial had the duty to tender payment. See, White v. Hulls, 59 Mont. 98, 104, 195 P. 850 (1921). Defendant, therefore, did not breach his contract for failure to tender payment for the stud horse.

Plaintiff did satisfy the condition precedent, however, when he presented the stud registration paper in District Court on the date of the trial, November 6, 1975. Defendant still has possession of the stud horse and must make just compensation to plaintiff. The amount which defendant owes plaintiff for the stud horse, more than nine years after the contract date, is a factual question properly determinable by the trial judge.

Plaintiff also claims that the district judge erred in finding that plaintiff had wrongfully attached defendant's property. Section 93-4301, R.C.M. 1947, allows prejudgment attachments only in actions upon contracts for the "direct payment of money". In this case, the trial judge found the contract did not call for direct payment of money, but required further performance (presentation of stud horse registration paper) as a condition to payment. Plaintiff's attachment therefore did not meet the statutory requirements and was wrong.

Plaintiff's final assertion of error is that the district judge improperly awarded exemplary damages of $400 for the wrongful attachment. It is true, as plaintiff claims, that under section 17-208, R.C.M. 1947, " * * * there can be no recovery of exemplary or punitive damages unless the plaintiff is entitled to actual damages." Smith v. Krutar, 153 Mont. 325, 335, 457 P.2d 459 (1969). Although the trier of fact, as a prerequisite for awarding exemplary damages, must find the claimant suffered actual damages, it is unnecessary that the trier of fact place a monetary value on the actual damages or make any award of actual damages. Fauver

v. Wilkoske, 123 Mont. 228, 239, 211 P.2d 420 (1949).

The trial judge, without putting a money value on the damages, found "that the Defendant incurred expenses and interruption of his business affairs caused by his having to stay in Montana to initiate legal proceedings to release the Attachment * * *" and that defendant suffered much embarrassment when he was served with the writ of attachment at the Glasgow fairground grandstand in the presence of his friends, wife and child. Because the judge found actual damages, he could legally award exemplary damages.

The other requirements of section 17-208 were also met, notwithstanding, plaintiff's assertions to the contrary. Plaintiff states that section 17-208 precludes recovery of exemplary damages in actions "arising from contract". The trial judge in this case, however, awarded exemplary damages not for breach of contract, but for wrongful attachment, a tort independent of the sales contract. See, Paulson v. Kustom Enterprises, Inc., 157 Mont. 188, 202, 483 P.2d 708 (1971). A plaintiff may recover exemplary damages in an action for wrongful attachment. See Larson v. Daily, 158 Mont. 231, 236, 490 P.2d 355 (1971).

Plaintiff maintains that even if the attachment was wrongful it was not done with the malice necessary under section 17-208 to sustain an award of exemplary damages. Malice necessary for an award of exemplary damages need not consist of spite or hatred; it is sufficient proof of malice in a wrongful attachment action that the defendant knew when the attachment was made that it was wrongful. See, Galindo v. Western States Collection Company, 82 N.M. 149, 477 P.2d 325, 330 (1970). In this case, plaintiff stated in his affidavit for attachment that the action was on a "contract for the direct payment of money now due", and that the payment of the contract obligation "has not been secured

by any mortgage or lien upon real or personal property". Plaintiff, however, knew when he filed the affidavit that the money was not "now due" until he showed defendant the stud registration paper and that defendant's contract debt was "secured" by plaintiff's retention of that registration paper.

For the reasons stated, the judgment of the district court as to plaintiff's liability for wrongful attachment is affirmed. The district court's judgment that defendant was not in breach of contract until the time of trial is affirmed, and the case is remanded to determine the amount on the contract price defendant owes plaintiff for a stud horse whose registration papers were not presented until the time of trial, nine years after the contract was made.

The trial judge is also instructed to place a dollar amount (if any or if merely nominal) on the actual damages which he has found that defendant sustained, and order that plaintiff pay that amount to defendant as actual damages for the wrongful attachment.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices