No. 87-514

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

FIRST BANK (N.A.)-BILLINGS,

        Plaintiff and Appellant,

    -vs-

RUSSELL C. CLARK,

        Defendant, Respondent and Cross-Appellant.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the the County of Yellowstone,
The Honorable Russell Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moulton, Bellingham, Longo & Mather; Brad H. Anderson
argued and W.H. Bellingham argued, Billings, Montana

    For Respondent:

        Herndon, Harper & Munro; Rodney T. Hartman argued,
Billings, Montana

---

Submitted:  December 29, 1988

Decided:  February 21, 1989

Filed:

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Plaintiff First Bank-Billings appeals from a jury verdict and subsequent judgment entered October 1, 1987 in the Thirteenth Judicial District Court, Yellowstone County, awarding defendant Clark $16,398.95 for costs and reasonable attorney's fees and $100,000 compensatory damages on his counterclaim for damages resulting from the Bank's breach of the covenant of good faith and fair dealing and commission of constructive fraud. The Bank does not appeal the jury's determination that defendant was not liable under a personal guaranty for the Parker-Montana Company debts remaining after its liquidation.

This Court entered a decision on December 16, 1988. First Bank-Billings v. Clark (Mont. 1988), 45 St.Rep. 2294. The Bank filed a timely Petition for Rehearing, pursuant to Rule 34, M.R.App.P., following this decision. Having considered the briefs filed by the parties on the petition, we now withdraw the original opinion and issue this opinion in its place.

Respondent raises the following issue on cross appeal:

1. Did the District Court err in refusing to submit Clark's actual fraud claim to the jury?

Appellant raises the following issues on appeal:

1. Did the District Court erroneously allow attorneys Everson and Ragain to testify that an oral agreement between First Bank and Clark, releasing Clark from a guaranty agreement, had been reached and breached?

2. Did the District Court erroneously admit lay witness testimony as to the reason Clark signed a peaceful repossession document?

3. Did the District Court erroneously instruct the jury as to damages for lost income, damage to reputation, and emotional distress?

4. Did the District Court err in instructing the jury on the issue of a fiduciary duty owed?

5. Did substantial, credible evidence support the jury verdict:

   a. that First Bank breached the implied covenant of good faith and fair dealing; and

   b. that First Bank committed constructive fraud?

Russell Clark (Clark) was the president and majority shareholder in the Parker-Montana Company (Company), a farm equipment wholesale business, from 1970 until the liquidation of the company in 1983. The Company maintained a good relationship with First Bank Billings (Bank), the Company's

chief bank affiliation, up until 1982 when the Company began experiencing severe financial difficulties.

In late 1982, both parties agreed that the Company was in dire financial straits and that either a reorganization or dissolution of the Company was necessary. The Bank recommended liquidation and the parties commenced liquidation negotiations. Clark was primarily concerned during these negotiations with obtaining a release from a personal guaranty agreement that both he and his wife had executed on July 23, 1979 to secure Bank loans made to the Company.

Dennis Hove, the Company Vice President, approached Clark in the first week of February of 1983 and stated his interest in purchasing the Company. Hove subsequently submitted a written buy-out proposal to the Bank, for implementation upon the sale of Company assets for debts outstanding. In this proposal, Hove offered to purchase all Company assets and to assume all Company liabilities, and in turn, Clark would be released from his personal guaranty. This purchase proposal hinged upon an agreement between the Bank and Company on the details of the intended liquidation. Consequently, a meeting was held on February 24, 1983, at which time the Bank set forth its proposal for liquidation of the Company.

The following people were present at this meeting: Russell Clark, James Ragain and Gary Everson (attorneys for the Company), Doug Aden (head of the Bank's commercial loan department), Bob Waller (Bank president and personal friend to Clark), Gerald Murphy (attorney for the Bank), and Jack Carpenter (Small Business Association representative). The Bank at that time proposed to release the Clarks from their personal guaranty if they would deed to the Bank all real property used by the business in Billings, but owned by the Clarks and the Clark Children's Trust, and if the Company would grant First Bank peaceful possession of all the Company's inventory and accounts receivable. Clark rejected this proposal because he felt the collateral to be turned over to the Bank exceeded the debts owed and because he did not want to convey real estate held in trust for the benefit of his children.

Another meeting with Murphy, Waller, Ragain, and Clark was held on February 28, 1983. At this meeting, Waller stated that the Bank would take a trust indenture, rather than a deed, on all the above-mentioned property and in return release the Clarks from their personal guaranty. The parties differ as to whether Clark accepted this offer and reached an agreement with the Bank.

Appellant contended that Clark did not accept this offer for the same reasons previously outlined. Appellant alternatively contended that if there was an agreement, that Clark breached it when he failed to convey trust indentures to all the property; respondent did not give the Bank a trust indenture to lots 15, 16, 17 and 18.

Respondent, on the other hand, contended that he accepted the modified offer, shook hands with Waller and "congratulated him on getting the job done." This agreement, however, was not reduced to writing. Yet, Hove testified that he struck a final deal with the Bank to purchase the Company after he was notified that an agreement had been reached between Clark and the Bank. Respondent further alleged that he fulfilled this agreement by giving a trust indenture to all the required lots. He was not required to give the Bank a trust indenture to lots 15, 16, 17 and 18, since Hove had secured an option to purchase these lots and had arranged financing. Hove later decided against purchasing these four lots, although his company did purchase and give the Bank a trust indenture to lots 2, 3, 4, 5, 6, 19, 20, 21, 22 and 23.

Both parties agree that the Bank decided to finance Hove's purchase of the Company's inventory and accounts receivable. The Bank arranged an April 7, 1983 auction of

6

this Company property, less $100,000 worth of inventory to which Borg-Warner had a superior security interest. The auction followed Clark's execution of a peaceful repossession agreement in favor of the Bank on March 4, 1983.

Hove bought all remaining inventory and accounts receivable at the auction with a high bulk bid of $1 million. Respondent alleged that this bid of $1 million was $100,000 less than that amount originally proposed and agreed upon by the Bank. An attorney for the respondent testified, however, that Doug Aden assured him over the phone just prior to the auction that the Bank would treat the actual bid as a $1.1 million bid for purposes of eliminating Clark's debt to the Bank.

The Salvation Army subsequently purchased lots 7, 8, 9 and 10 from the Clarks in April of 1984. Pursuant to an agreement that Clark had with the Bank, Clark placed the net proceeds from this sale ($62,000) in an interest bearing account with the Bank. Clark later voluntarily awarded these funds to the involuntary bankruptcy trustee pursuant to a settlement agreement. (Borg-Warner and other creditors, not including the Bank, had filed an involuntary bankruptcy action against the Company on March 24, 1983.)

On November 8, 1984, the Bank filed suit against Clark on his personal guaranty in order to collect on the alleged

Company debt of approximately $233,000 remaining after the auction. Clark was asked to resign from his position on the board of directors of First Interstate Bank in December of 1984. The decision to request Clark to resign was reached after discussion, continuing over several months, of the value of Clark's continued representation on the board given his Company's severe financial problems. Each year he had served as a director, Clark earned $5,000-$6,000.

A jury trial was held July 6 through July 11, 1987. The jury determined that Clark was not obligated, under his personal guaranty, for any Company debts. The jury awarded Clark $100,000 on his counterclaim for damages due to the Bank's bad faith and constructive fraud. However, the court refused Clark's request to submit instructions on actual fraud to the jury, and consequently, the jury determined that Clark was not entitled to punitive damages.

This appeal and cross appeal followed.

I. JURY INSTRUCTION ON ACTUAL FRAUD

For purposes of convenience, we have chosen to discuss the issue raised on cross appeal first. Respondent alleges by way of a cross appeal that the court erred in refusing to instruct the jury on the issue of actual fraud. Yet, a jury instruction on actual fraud is warranted only if defendant

8

raised a question of fact by presenting some evidence of each of the following nine elements of actual fraud:

1. A representation;

2. Falsity of the representation;

3. Materiality of the representation;

4. Speaker's knowledge of the falsity of the representation or ignorance of its truth;

5. Speaker's intent that it be relied upon;

6. The hearer's ignorance of the falsity of the representation;

7. The hearer's reliance on the representation;

8. The hearer's right to rely on the representation; and

9. Consequent and proximate injury caused by the reliance on the representation.

McGregor v. Mommer (Mont. 1986), 714 P.2d 536, 540, 43 St.Rep. 206, 211, citing Van Ettinger v. Pappin (1978), 180 Mont. 1, 10, 588 P.2d 988, 994.

The defendant failed to introduce any such evidence that the Bank made a false representation, which it knew to be false at the time, intending that Clark would rely on it to his detriment. Absent any evidence of the Bank's actual intent to defraud Clark during the meeting of February 28, 1983, we find that the court did not err in refusing to instruct the jury about actual fraud.

## II.  LAY WITNESS TESTIMONY OF AN AGREEMENT AND BREACH

Appellant contends that the District Court erred in allowing attorneys Everson and Ragain to testify that the Bank and Clark had reached an agreement releasing Clark from his personal guaranty.  However, respondent contends that the two attorneys' presence at the February 1983 negotiation meetings qualified them to testify to their personal perceptions as lay witnesses.  Rule 701, M.R.Evid., permits a lay witness to offer such an opinion if it is "rationally based on the perception of the witness and . . . helpful to . . . the determination of a fact in issue."  Further, a lay witness may even give an opinion on an ultimate factual issue if it complies with the foundational requirements in Rule 701, M.R.Evid., however, the opinion testimony must be "confined to matters of fact."  In re the Estate of Smith (Mont. 1988), 749 P.2d 512, 517, 45 St.Rep. 93, 100, citing Olson v. Coats (Or. 1986), 717 P.2d 176, 178; Rule 704, M.R.Evid.

The contested testimony offered by Everson and Ragain, that an agreement was reached and later breached, certainly involved a fact in issue.  (Both parties correctly conceded this point in the pretrial order.)  Moreover, this testimony certainly could prove helpful to a jury determination, if based upon personal observations, in light of all the conflicting evidence presented as to whether an agreement was in fact ever reached.  However, Everson's testimony that the parties reached an agreement was _not_ based on his personal perceptions.  Rather, he relied upon information gathered from conversations with others.

A lay witness may not testify to such evidence gathered from interviews with other persons.  State v. Clark (1984), 209 Mont. 473, 485, 682 P.2d 1339, 1345-46.  Thus, in _Clark_,

10

this Court excluded an investigator's testimony that the defendant had a legitimate alibi, because the investigator's proposed testimony, determined by interviews with others, was not based on his own perceptions. The Court further concluded that evidence which is not based upon personal perceptions is not helpful to a jury. A jury is qualified to draw their own inferences and conclusions from those witnesses who do testify to their personal perceptions. Clark, 682 P.2d at 1346.

Everson's testimony of an agreement, based upon his conversations with others, was similarly inadmissible. By his own admission, Everson was uncertain whether he attended the February 28, 1983 meeting during which the parties reached the alleged agreement:

> I do remember a meeting where it was all discussed, and I can't recall for positive, five years ago, if that was the meeting that it was agreed to, or it was discussed. . .

Clark, however, clearly remembered who was present at the February 28, 1983 meeting, and he testified that Everson was not present. Everson's opinion that an agreement was reached thus could not be based on his own personal perception of the meeting. Everson and Ragain's lay witness testimony of a breach similarly was not based on personal perceptions. The District Court thus erred in admitting this lay witness testimony.

III. LAY WITNESS TESTIMONY REGARDING THE PEACEFUL REPOSSESSION DOCUMENT

The District Court similarly erred in allowing Wayne Fitzgerald, a member of the Company's management team, to testify that Clark signed the peaceful repossession document in exchange for Clark's release from his personal guaranty. Fitzgerald based his opinion solely on hearsay statements

11

made by Clark. Respondent contends that this hearsay testimony, however, was excepted from the hearsay rule and thus was properly admissible under Rule 803, M.R.Evid., as a statement of Clark's state of mind on February 28, 1983.

Rule 803(3), M.R.Evid., states that the following are exceptions to the hearsay rule:

> A statement of the declarant's then-existing state of mind, emotion, sensation, or physical condition..., but not including a statement of memory or belief to prove the fact remembered or believed. (Emphasis added.)

As stated in the Commission Comments, the hearsay rule would effectively be destroyed if statements indicating a state of mind were admissible to infer "the happening of the event which produced the state of mind." Consequently, such statements are expressly inadmissible as hearsay under Rule 803(3), M.R.Evid. Clark's later statement to Fitzgerald of his belief that he would be released from the guaranty if he signed the peaceful repossession document similarly may not be admitted to prove that the Bank did in fact release Clark from the guaranty.

The testimony of Fitzgerald, as well as of Everson and Ragain, related to a central issue of the case, namely, whether the parties reached an agreement and subsequently breached it. We hold that the admission of this testimony was erroneous and highly prejudicial to the plaintiff's case.

IV. JURY INSTRUCTIONS ABOUT DAMAGES

Appellant contends that the evidence introduced at trial was insufficient to warrant a jury instruction on loss of income, damage to reputation, or emotional distress.

Unquestionably, the jury has a right to hear and decide all questions of fact. Section 26-1-202, MCA. However, the trial judge is the one who must initially decide if a question of fact exists which warrants a jury instruction. See Rule 51, M.R.Civ.P. If any evidence exists in the record to warrant an instruction, the district court must offer a jury instruction on the issue. E.g., State v. Grant (Mont. 1986), 717 P.2d 562, 569, 43 St.Rep. 685, 692, citing State v. Buckley (1976), 171 Mont. 238, 242, 557 P.2d 283, 285.

A. LOST PROFITS AND REPUTATION DAMAGES

Generally, a court should instruct a jury about damages resulting from lost income only if the record reveals some evidence that a wrongful act of one party caused the lost income. 2 M. Minzer, Damages in Tort Actions § 10.11 (1988); see generally Western Union Telegraph Co. v. Hall (1888), 124 U.S. 444, 8 S.Ct. 577, 31 L.Ed. 479. In the present case, the defendant alleged that the Bank's filing of this lawsuit cost him his position as a board member of First Interstate Bank-Billings, a position netting Clark an income of $5,000-$6,000 per year. The defendant also alleged that his reputation was damaged by the filed lawsuit. Even assuming arguendo that the Bank's action in filing the instant suit led to Clark's lost income and damaged reputation, Clark still had to introduce some evidence indicating that the Bank's action was wrongful. Without such evidence, the defendant is not entitled to any recovery and the jury is not entitled to even consider the issue. No such evidence was introduced showing that the filing of the suit was wrongful.

Utilization of the legal process to resolve a good faith controversy cannot constitute a basis for damages. Heine v. Seibert (Mont. 1985), 703 P.2d 865, 868, 42 St.Rep. 1152, 1156. Resort to the legal process for resolution of a

controversy is wrongful only upon proof that prosecution of the action was malicious. A charge of malicious prosecution in turn requires some evidence of each of the following basic elements:

1. A judicial proceeding commenced against the party alleging malicious prosecution;

2. the other party's responsibility for instigating the proceeding;

3. a want of probable cause for the other party's action;

4. the existence of malice as the motivator behind the other party's action;

5. the termination of the proceeding in favor of the alleging party; and

6. damages suffered by the party alleging malicious prosecution. McGuire v. Armitage (1979), 184 Mont. 407, 410, 603 P.2d 253, 255.

The fifth requirement of the termination of a judicial proceeding in favor of the party alleging malicious prosecution:

> [N]ecessarily implies that an action for malicious prosecution may not be asserted by way of a cross complaint or counterclaim in the original proceeding.

McGuire, 603 P.2d at 255, citing Baker v. Littman (Cal. 1956), 292 P.2d 595. Yet, the defendant attempted to do just that in this case. Defendant's assertion, that he was entitled to jury instructions and damages for the lost income and damaged reputation allegedly resulting from the Bank's filed lawsuit, necessarily charged the Bank with wrongful prosecution of this case. The defendant, however, failed to introduce any evidence of a prior judicial proceeding terminated in his favor. He erroneously asserted his claim

14

to a jury instruction for such damages by way of a counterclaim. Additionally, the defendant failed to introduce any evidence of malice or lack of probable cause. This lack of evidence of three of the key elements for a prima facie case of malicious prosecution, and thus of any wrongful action by the plaintiff in filing this action, undermined the defendant's assertion that he was entitled to a jury instruction on damages for lost income and a damaged reputation. Accordingly, we hold that the District Court erred in submitting an instruction on these damages to the jury.

B. DAMAGES FOR EMOTIONAL DISTRESS

By statute, an injured party may recover an amount in damages which will compensate him for all the detriment, including emotional distress, proximately caused by the other party's tortious conduct. Section 27-1-317, MCA; Gibson v. Western Fire Ins. Co. (1984), 210 Mont. 267, 291, 682 P.2d 725, 738. However, the injured party must introduce some evidence of the alleged damages from emotional distress before a jury is entitled to decide the issue of compensation for such damage. A jury instruction about damages for emotional distress is warranted, in the absence of any physical or mental injury, only if the defendant introduced some proof that plaintiff's tortious conduct resulted in "a substantial invasion of a legally protected interest and . . . [caused] a significant impact on the person." Johnson v. Supersave Markets, Inc. (Mont. 1984), 686 P.2d 209, 213, 41 St.Rep. 1495, 1500; Noonan v. First Bank Butte (Mont. 1987), 740 P.2d 631, 635, 44 St.Rep. 1124, 1129.

We note that the interest legally protected by this cause of action is the interest in freedom from emotional distress. See Restatement (Second) of Torts § 46 comment b

15

(1965). However, because we do not live in "an 'eggshell society' in which every harm . . . gives rise to a right of action for mental distress," this Court has held that a cause of action arises only if the invasion of this interest is substantial and the impact significant. Johnson, 686 P.2d at 213. The requirement of a significant impact indicates that the emotional distress suffered by the victim must be severe. This interpretation is in accord with the following portion of the Restatement (Second) of Torts § 46 comment j (1965), which we adopt and which states:

> Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity . . . The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge . . . It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

See also Buckley v. Trenton Savings Fund (N.J. 1988), 544 A.2d 857 (holding that loss of sleep, aggravation, embarrassment, some headaches and nervous tension were insufficient to establish severe emotional distress); Bethards v. Shivvers, Inc. (Iowa 1984), 355 N.W.2d 39 (holding that lost sleep, anger, quivering when the contested subject arose, and worry over what other people would think did not rise to the level of severe emotional distress).

A district court has the duty of determining the threshold question of whether any proof of such severe emotional distress exists sufficient to raise a question of fact for the jury. Absent any such proof, a jury instruction on damages for emotional distress is improper. E.g., Richardson v. Fairbanks North Star Borough (Alaska 1985), 705 P.2d 454, 456; Shivvers, 355 N.W.2d at 44.

A jury instruction on emotional distress damages was improper in this case as the evidence introduced during the District Court trial was insufficient to raise a question of fact about the existence of severe emotional distress. Defendant alleged only that he felt bad, lost sleep, and became withdrawn as a result of the Bank's failure to release him from his personal guaranty in violation of the alleged agreement between the parties. We therefore hold that the District Court erred in submitting the issue of emotional distress damages to the jury.

Our endorsement of the severe emotional distress standard found in the Restatement (Second) of Torts does not amount to a sudden departure from prior law regarding emotional distress damages. Severe emotional distress is only a new interpretation of the existing "significant impact" requirement. We therefore need not remand the case for a new trial on the issue of emotional distress damages

17

under this new interpretation. The fact a party may be taken by surprise by the ruling of a reviewing court does not justify a remand when the reviewing court's ruling, even if it is on an issue of first impression, does not constitute a sudden departure from the established rule of law. E.g., Brodie v. Hawaii Automotive Retail Gasoline Dealers Ass'n (Hawaii 1982), 655 P.2d 863, 864. Clark had a full and fair opportunity to introduce all evidence of emotional distress damages during the District Court trial. This Court has previously held that a failure of proof after a fair opportunity to introduce all evidence will be attributed to an inability to prove such, rather than to any neglect by counsel. State ex rel. La France Copper Co. v. District Court (1909), 40 Mont. 206, 208, 105 P. 721, 723; Harrington v. Montgomery Drug Co. (1941), 111 Mont. 564, 567, 111 P.2d 808, 810. We thus hold that Clark's failure to introduce facts indicating severe emotional distress was due to his inability to do so, and a new trial on the issue thus would be futile, as well as contrary to the foregoing rule of law.

V. JURY INSTRUCTION ON FIDUCIARY RELATIONSHIP

Appellant also contends that the court erred in submitting a jury instruction on fiduciary relationships as the evidence introduced at trial failed to warrant such an instruction. Generally, a court errs in offering a proposed instruction if the subject matter of the instruction is not supported by the evidence introduced at trial. See generally Associated Agency of Bozeman, Inc. v. Pasha (Mont. 1981), 625 P.2d 38, 42, 38 St.Rep. 344, 348 (holding that it was not error to refuse to offer a proposed instruction when the evidence failed to support it). Consequently, we will determine that the District Court erred in offering an

18

instruction on fiduciary relationships only if the record indicates a lack of evidence of this type of a relationship.

A fiduciary relationship exists between a bank and its creditor only if special circumstances indicate exclusive and repeated dealings with the Bank. Pulse v. North American Land Title Co. of Montana (Mont. 1985), 707 P.2d 1105, 42 St.Rep. 1578. This Court has recently interpreted the Pulse case as requiring a bank to act as a financial advisor in some capacity, other than that common in the usual arms-length debtor/creditor relationship, in addition to requiring a long history of dealings with the bank, to establish a fiduciary relationship. Simmons v. Jenkins (Mont. 1988), 750 P.2d 1067, 1070, 45 St.Rep. 328, 331.

Evidence introduced at trial attested to the long standing business relationship between the Company and the Bank. However, no evidence was introduced indicating that the Bank had acted as a financial advisor to the Company in a manner other than that common in the usual arms-length debtor/creditor relationship. Rather, the Company relied upon its own management team to make its financial decisions. An independent firm of attorneys routinely advised and represented the Company. Attorneys Ragain and/or Everson were present during the final negotiation meetings with the Bank; evidence of the long-standing friendship between Clark and the Bank president was insufficient to show that the Company relied upon the Bank as a financial advisor in such a manner as mentioned above. We therefore hold that the defendant failed to introduce any evidence showing that the parties had other than the arms-length debtor/creditor relationship which generally exists between a bank and its creditor. See Deist v. Wachholz (1984), 208 Mont. 207, 216,

678 P.2d 188, 193. Consequently, the court erred in submitting a fiduciary relationship instruction to the jury.

VI. SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE VERDICT

Appellant initially raised the issue of whether the court erred in instructing the jury about the implied covenant of good faith and fair dealing and constructive fraud. The discussion in appellant's brief, however, centered wholly on whether the evidence supported the jury verdict on these two issues. We need not rule on the issue of whether the evidence supported the jury's verdict of breach of the implied covenant of good faith and constructive fraud before dismissing this case. Even if these claims were deemed to have merit, Clark would only be entitled to nominal damages. We have held that Clark is not entitled to a recovery under any of the damage theories presented (which included damages for lost profits, damaged reputation and emotional distress), and a party may not raise new issues on retrial. This Court will not grant a new trial to permit a party to obtain only such an award of nominal damages. Bogovich v. Scandrett (1945), 117 Mont. 341, 350, 158 P.2d 637, 641. We therefore reverse the judgment of the District Court, in accordance with the foregoing discussion, and order the court to dismiss this case.

_____
Justice

We concur:

_____
Chief Justice

_____
John Conway Harrison

20

_William E Hunter_

_R. C. McDonough_

_[signature]_

Justices

_Frank I. Haswell_

The Honorable Frank I. Haswell,
retired Chief Justice, sitting
for Mr. Justice John C. Sheehy