No. 90-436

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

LINDA McNEIL,

      Plaintiff and Appellant

    v.

THOMAS CURRIE and FARMERS INSURANCE
GROUP, FARMERS INSURANCE GROUP OF
COMPANIES, and THE TRUCK INSURANCE
EXCHANGE,

      Defendants and Respondents.



FILED

APR 9 - 1992

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Deer Lodge,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael J. McKeon, Attorney at Law,
        Anaconda, Montana

    For Respondents:

        Steven S. Carey, Garlington, Lohn & Robinson,
        Missoula, Montana; Robert C. Brown, Poore,
        Roth & Robinson, Butte, Montana

Submitted on Briefs: September 24, 1991

Decided: April 9, 1992

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Linda McNeil appeals from an order of summary judgment granted by the District Court of the Third Judicial District, Deer Lodge County, in favor of defendants Thomas Currie, Farmers Insurance Group, Farmers Insurance Group of Companies and The Truck Insurance Exchange. The District Court held that there were no genuine issues of material fact and the applicable law supported defendants' motions for summary judgment. We affirm in part and reverse in part.

The issues on appeal are:

1. Whether the District Court erred in determining that McNeil did not have a claim for a breach of the implied covenant of good faith and fair dealing.

2. Whether the District Court erred in determining that McNeil did not have a claim for fraud.

3. Whether the District Court erred in finding that McNeil did not have a claim under the Unfair Claim Settlement Practices Act.

4. Whether the District Court erred in determining McNeil did not have a claim for intentional infliction of emotional distress.

A review of the somewhat complex factual background is necessary. Appellant Linda McNeil (McNeil) has owned a clothing store, Calico & Company, in Anaconda, Montana, since 1983. Respondent, Thomas Currie (Currie), was an independent insurance agent during the time in question. Currie sold products of both Farmers Insurance Group (Farmers) and Truck Insurance Exchange

(TIE), a member of Farmers Insurance Group. Currie's business, "Thomas Currie Insurance" was located next door to McNeil's clothing store in Anaconda.

In June of 1984, McNeil approached Currie about purchasing insurance coverage for her business. Currie filled out an application for a special Sentinel package policy from TIE. McNeil signed the application and gave Currie a check for $113.00 as a down payment. The balance of $113.00 was due within 60 days if TIE accepted the risk of insuring McNeil's store.

On June 28, 1984, Currie submitted the application along with the check to TIE. TIE sent Currie a notice on July 9, 1984, stating that Calico & Company was ineligible for a special Sentinel policy, but that TIE would consider the business for a regular Sentinel policy, and that a completed application should be sent. Currie testified he mistakenly thought TIE would consider Calico & Company for the regular Sentinel policy from the original application already submitted. Thus, no application for a regular Sentinel policy was submitted by Currie. Consequently, TIE did not issue McNeil a policy. TIE provided binder coverage to McNeil from July 1, 1984 through September 4, 1984. Currie testified he led McNeil to believe she was going to receive a policy.

TIE did not accept the application for the special Sentinel policy because Calico & Company did not meet the policy requirements of being in business for at least three years and did not have the requisite Dun & Bradstreet (D & B) Credit Rating. On July 31, 1984, TIE sent a notice of cancellation, along with a refund, to Linda McNeil's correct address at her store in Anaconda.

3

On August 1, 1984, McNeil unaware of the cancellation, sent in the balance of $113.00 for the premium. McNeil testified she did not receive the notice of cancellation, but recalled seeing it in her files.

The refund check of $74.10 less $38.90 from the first $113.00 installment, covered the amount for the binder coverage provided between July 31, 1984 and September 4, 1984. TIE refunded the second check in September of 1984. This check went to Currie's office payable to McNeil. McNeil testified that no discussions between herself and Currie regarding the insurance occurred again until after the first of the year. However, Currie testified he told McNeil to ignore a cancellation notice if she received one.

On December 24, 1984, William Jarvi, who is not a party to this lawsuit, drove his automobile into the building which housed Calico & Company and Thomas Currie Insurance, causing damage to both businesses. Jarvi was, coincidentally insured by Farmers. John Gillespie, a Farmers claim adjuster, adjusted and settled McNeil's claim under Jarvi's policy. McNeil did not submit a claim under her policy.

During the time the claim was being adjusted under Jarvi's insurance, attorney Greg Skakles represented McNeil. Skakles settled the claim with Farmers on behalf of McNeil for $5,006.95 on April 19, 1985. The settlement included payment for emotional distress and lost profits for the two days the store was closed after Christmas.

McNeil testified she found out she didn't have a policy sometime in February of 1985. McNeil testified on deposition that

she repeatedly requested a copy of her insurance policy from Currie. Attorney Skakles also requested a copy of the policy from Currie. Currie testified that when he realized his mistake that an application for the regular Sentinel policy was necessary, he informed Skakles. Skakles demanded Currie obtain immediate insurance coverage for McNeil's store.

Subsequently, on May 3, 1985, Currie sent an application with McNeil's file signature, to TIE, this time for a regular Sentinel policy along with the two refund checks TIE had returned in August and September of 1984. Currie testified that he obtained the refund checks from McNeil. McNeil testified she was unaware of this second May 1985 application, even though her attorney demanded Currie obtain coverage for her. Representatives of TIE testified that McNeil received binder coverage from March 14, 1985 to September 1, 1985, and if McNeil had sustained a loss during that period, she would have been covered.

This second policy application was denied by TIE on May 24, 1985. Currie notified Skakles of the denial. Farmers applied the two refund checks to the binder coverage for McNeil's store from March 14, 1985 until September 1, 1985. However, McNeil still owed $242.00 for the binder coverage. TIE sent notices for the premium to McNeil on July 1, 1985, and July 25, 1985. These documents advised McNeil to inform TIE if she had obtained other coverage for the same time period, and if so, the premium charge would be dropped. McNeil testified she did not receive these notices.

McNeil applied for business insurance with Yeoman Insurance of Anaconda and received a policy effective June 3, 1985. Neither

McNeil or Skakles informed TIE she obtained this coverage. After two more premium notices were sent to McNeil, TIE turned the account over to D & B for collection. McNeil received a collection notice from D & B to which she replied on August 22, 1985, informing TIE that she never received a policy and did not owe them any money. After D & B failed to collect the amount from McNeil, they sent the account back to Farmers. Farmers halted any efforts to collect the amount.

McNeil filed a lawsuit alleging that the defendants breached the covenant of good faith and fair dealing, committed fraud, violated the Unfair Trade Practices Act, and the defendants' conduct constituted an intentional infliction of emotional distress. The District Court granted summary judgment in favor of TIE. McNeil appeals.

The scope of review is the same as the trial court. Summary judgment under Rule 56(c), M.R.Civ.P., is proper only if the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Beaverhead Bar Supply v. Harrington (1991), 247 Mont. 117, 120, 805 P.2d 560, 562.

I

Whether the District Court erred in determining that McNeil did not have a claim for breach of the implied covenant of good faith and fair dealing.

McNeil maintains that the District Court erred when it held that she failed to claim a breach of contract, and therefore, could not sustain a recovery under the breach of the implied covenant of good faith and fair dealing. However, a precedent breach of the

6

underlying contract is no longer a requirement. Recently, we said: "In order to recover . . . on a theory of breach of the implied covenant, there must be an enforceable contract to which the covenant attends." Beaverhead Bar Supply v. Harrington, (1991), 247 Mont. 117, 124, 805 P.2d at 564, citing Story v. City of Bozeman (1990), 242 Mont. 436, 450, 791 P.2d 767, 775.

Story was decided on May 3, 1990. The District Court rendered its opinion and order on June 27, 1990. The general rule is that "A change in the law between a nisi prius (here the ruling in the district court) and an appellate decision requires the appellate court to apply the changed law." Thorpe v. Housing Authority of the City of Durham (1969), 393 U.S. 268, 281, citing Ziffrin, Inc. v. United States (1943), 318 U.S. 73, 78. This Court, citing Thorpe, has provided that "generally an appellate court must apply the law in effect at the time it renders its decision." Lee v. Flathead County (1985), 217 Mont. 370, 373, 704 P.2d 1060, 1063. Story says in applying the covenant to a contract, the honesty in fact standard applies. Story v. City of Bozeman (1990), 242 Mont. 450, 791 P.2d 775.

The honesty in fact standard, therefore, must be met for a breach of the covenant of good faith and fair dealing, which results in the breach of the contract itself. That is,

> Each party to the contract has a justified expectation that the other will act in a reasonable manner in its performance or efficient breach. When one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract, the contract is breached.

Story at 450, 791 P.2d 775.

Evidence existed that Currie received information from TIE in July of 1984 that they would not underwrite McNeil's store. While Currie testified he made a mistake in interpreting the underwriting action, there is testimony of misinformation from Currie to McNeil and therefore the determination as to his credibility and honesty lies with the trier of fact. Thus, McNeil is entitled to prove that Currie acted dishonestly in handling her application. If McNeil can prove Currie acted dishonestly, thus sustaining a breach of contract under the implied covenant, only contract damages are due. McNeil has already been reimbursed for the cost of the policy plus interest. McNeil also pled costs as damages which may be awarded after the outcome of the proceedings.

Damages are sometimes available for the contract related tort of good faith and fair dealing. However, McNeil does not satisfy the requirements to sustain an action for tortious breach of the implied covenant as set forth in Story. In order for the tort of bad faith to apply, all the essential elements of the special relationship must be present. Story at 451, 791 P.2d at 776.

> (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in superior position to account for its actions, and (b) they do not make the inferior party "whole"; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; [and] (5) the other party is aware of this vulnerability.

Story at 451, 791 P.2d at 776.

Cases determining that a special relationship exists between insured and insurer usually analyze fact situations in which

8

insurance companies have the upper hand in settling claims, denying coverage and paying claims. See State Farm Fire & Cas. Co. v. Nichols (Alak. 1989), 777 P.2d 1152, 1155-57; Alaska Pacific Assur. Co. v. Collins ( Alak. 1990), 794 P.2d 936. However, under the undisputed facts of this case, the parties are not in inherently unequal bargaining positions. McNeil, a businesswoman, approached Currie about obtaining insurance. The purchase of insurance was a business deal which she could have entered into with any other insurance agent. McNeil fails to satisfy an element of a special relationship and does not have a bad faith claim in tort.

We therefore reverse the District Court as to the contract action, and affirm as to the bad faith action in tort.

## II

Whether the District Court erred in determining that McNeil did not have a claim for fraud.

A prima facie case of actual fraud must include the following nine elements: 1) proof of a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) the hearer's reliance on its truth; 8) the right of the hearer to rely upon it; and 9) the hearer's consequent and proximate injury or damage. Avco Financial Services v. Foreman-Donovan (1989), 237 Mont. 260, 772 P.2d 862, 864. Although McNeil failed to plead the elements of fraud with particularity as required by Rule 9(b) M.R.Civ.P., evidence of fraud was presented in deposition, waiving any defense

9

to the violation of Rule 9(b).

Here, McNeil admitted seeing the cancellation notice in her office files. Currie testified he advised her to ignore a cancellation notice if she received one, and also gave assurance of coverage. McNeil testified she never spoke to Currie about it. Thus, there is an issue here as to credibility and summary judgment is not proper. In addition, in viewing all inferences that may be drawn in favor of the non-moving party, there is evidence of proof of the first eight elements. Damages (No. 9) are a necessary element of fraud. The fraud damages McNeil claims are difficult to ascertain. A plaintiff may only recover for damages that are proximately caused by the defendant's misrepresentations. § 27-1-317, MCA (1991). Montana cases on the subject only require a finding of damages. As we said in Miller v. Fox:

> It is true, as plaintiff claims, that under § 17-208, R.C.M. 1947, " * * * there can be no recovery of exemplary or punitive damages unless the plaintiff is entitled to actual damages." Smith v. Krutar (1969), 153 Mont. 325, 335, 457 P.2d 459, 464. Although the trier of fact, as a prerequisite for awarding exemplary damages, must find the claimant suffered actual damages, it is unnecessary that the trier of fact place a monetary value on the actual damages or make any award of actual damages. Fauver v. Wilkoske (1949), 123 Mont. 228, 239, 211 P.2d 420.

Miller v. Fox (1977), 174 Mont. 504, 510, 571 P.2d 804, 808. If a finding of damages is made, the trier of fact could make an award for punitive damages if the requisite malice were proved. Miller at 510-511, 571 P.2d at 808; Butcher v. Petranek (1979), 181 Mont. 358, 364, 593 P.2d 743. Therefore, we conclude that the District Court erred in ruling McNeil failed to make a prima facie case for fraud.

10

Whether the District Court erred in finding that McNeil did not have a claim under the Unfair Trade Practices Act.

McNeil argues that §§ 33-18-201 and 33-18-212, MCA, apply to the facts. Title 33, MCA, governs insurance and insurance companies. Section 33-18-201, MCA, titled "Unfair claim settlement and practices prohibited", governs situations in which claims have been made to insurance companies. Under the facts of this case, McNeil never submitted a claim to TIE. Accordingly, we hold that § 33-18-201, MCA, is not applicable.

Section 33-18-212, MCA, states in part:

> **Illegal dealing in premiums--improper charges for insurance.** (1) a person may not willfully collect any sum as premium or charge for insurance, which insurance is not then provided or is not in due course to be provided (subject to acceptance of risk by the insurer) by an insurance policy issued by an insurer as authorized by this code.

Currie did collect a sum from McNeil as a premium which he submitted to Farmers. While it is true that McNeil did not receive a policy, she did receive binder coverage between July 1, 1984 and September 4, 1984, and March 14, 1985 and September 1, 1985. Farmers declined to accept the risk of insuring McNeil's store based on the amount of time McNeil had been in business, and her low D & B rating. These facts do not support a violation of § 33-18-212, MCA.

We hold neither Currie nor Farmers violated §§ 33-18-212 or 33-12-201, MCA, therefore the District Court did not err in concluding that McNeil did not have a claim under the Unfair Trade Practices Act.

Whether the District Court erred in determining McNeil did not have a claim for intentional infliction of emotional distress.

McNeil maintains that Currie constantly badgered her to reopen her business quickly after the Christmas Eve accident and that he pressured her to accept settlement under Jarvi's policy. McNeil testified that she was embarrassed and humiliated to open her store while the windows were boarded with plywood. Further McNeil worried that the D & B collection attempt would affect her credit rating. As a result, McNeil contends she developed dermatological problems requiring medical treatment. In support of her position, McNeil relies on Niles v. Big Sky Eyewear (1989), 236 Mont. 455, 771 P.2d 114, for the proposition that Montana recognizes an independent cause of action for intentional infliction of emotional distress.

In Niles we affirmed the District Court's refusal to issue a directed verdict in favor of the employer Big Sky Eyewear. Big Sky Eyewear falsely accused Niles of stealing and had her arrested and as a result she spent time in jail. In Niles we stated: "Where there is evidence of substantial invasion of a legally protected interest which causes a significant impact upon the person of the plaintiff, emotional distress is compensable without showing of physical or mental injury." Niles at 465, 771 P.2d at 119, citing Johnson v. Supersave Markets, Inc. (1984), 211 Mont. 465, 475, 686 P.2d 209, 213. Under the facts, this Court held that Niles met this standard and declined to overturn the District Court's denial of defendant's directed verdict on the issue. In the case at bar

McNeil can show no similar substantial invasion of a legally protected interest.

In Day v. Montana Power Co. (1990), 242 Mont. 195, 789 P.2d 1224, we said, "We have adopted only comment j to Restatement (Second) of Torts § 46 (1965), defining severe emotional distress. First Bank (N.A.) v. Clark (1989), 236 Mont. 195, 771 P.2d 84, 91. Section 46 concerns the tort of intentional infliction of emotional distress which we have not recognized as a cause of action." Day at 200, 789 P.2d at 1227. See also Doohan v. Bigfork School Dist. No. 38 (1991), 247 Mont. 125, 143, 144, 805 P.2d 1354, 1362, 1365, in which this Court declined to find a prima facie case for intentional infliction of emotional distress under the facts.

Moreover, § 46 of the Restatement provides: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and if bodily harm to the other results from it, such bodily harm."

Neither the conduct of Currie nor Farmers rises to the level of extreme and outrageous. Further, the emotional distress suffered by McNeil does not rise to the level of severity called for in the Restatement. McNeil saw Dr. Neill, a dermatologist, on two occasions for treatment of what Dr. Neill labeled moderate acne. Dr. Neill testified that stress was one possible cause of the acne. Commentators to the Restatement note: " . . . The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it." Restatement (Second) of Torts § 46 (1965), comment j. We find that a

13

reasonable person in our society should be expected to endure the problems McNeil suffered.

Additionally, although McNeil was worried about her credit rating, she testified that her credit rating was not affected by the D & B collection attempt. She has not been turned down for a loan, nor denied inventory credit for store purchases.

We conclude that the District Court did not err in granting defendants' motions for summary judgment on McNeil's intentional infliction of emotional distress claim.

Therefore, we affirm in part and reverse in part and remand to District Court for proceedings not inconsistent with this opinion.

_____
                         Justice

We Concur:

_____
          Chief Justice

_____

_____

_____

_____
          Justices

14

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with those parts of the majority opinion which affirm the District Court's order dismissing plaintiff's claims for violation of § 33-18-201, MCA, and for intentional infliction of emotional distress. I also concur with that part of the majority opinion which reverses the District Court's dismissal of plaintiff's claim which was based on fraud.

## I

I dissent from that part of the majority opinion which affirms the District Court's order dismissing plaintiff's claim for tort damages based upon breach of the implied covenant of good faith and fair dealing.

As I stated in *Haines Pipeline v. Montana Power Company* (Mont. 1991), 48 St.Rep. 1102, 1109, I would not follow *Story v. City of Bozeman* (1990), 242 Mont. 436, 791 P.2d 767.

*Story* represents a sorry chapter in Montana jurisprudence, which for all practical purposes eliminated the tort of bad faith. In doing so, this Supreme Court did no favor to the citizens of this State.

> The tort law of bad faith evolved through careful reasoning and long experience to take the profit out of dishonest and oppressive business practices. *Story* returned that profit for those in superior bargaining positions.
>
> Every consumer and small businessman and woman in Montana are worse off because of *Story*.

*Haines Pipeline*, 48 St.Rep. at 1109 (Trieweiler, J., dissenting).

15

The worst part of the *Story* decision is that the legal principle for which it stands was not even an issue raised and briefed by the parties on appeal. As pointed out by Justice Sheehy in his dissenting opinion:

> When we read the second portion of the majority opinion, a light dawns as to the reason for the reversal on this thin record. The majority have a higher agenda, one beyond the appeal in this case: the implied reversal of *Nicholson v. United Pacific Ins. Co.* (1985), 219 Mont. 32, 710 P.2d 1342. They use the vehicle of this case, weak as it is, to work their purpose.
>
> There is no issue raised in this case from the parties or the record as to the concept of implied covenant of good and fair dealing in contracts. The law applying to this subject used by the District Court *was that supplied by the defendants*. That application by the District Court has become the law of the case. Without briefs on the issues, and without notice to the Bar in general, the majority accomplishes the following results:
>
> . . . .
>
>> 3. Where no special relationship exists, the only available damages are contract damages, regardless of how egregious the conduct of the wrongdoing party is and regardless of the *tort* involved.
>
> . . . .
>
> What the majority have done in this case is to abrogate any remedy for arbitrary, capricious or egregious conduct by a contracting party, upon issues not raised in this file nor on the record and without notice to the Bar in general. The reversal of the hard-won verdict obtained by Mark Story in this case is a joke. Under the limitations of the majority opinion, he will never again be justly compensated by any jury.

*Story*, 791 P.2d at 780, 782 (Sheehy, J., dissenting).

16

I believe that the sounder public policy was articulated in *Nicholson v. United States Pacific Insurance* (1985), 219 Mont. 32, 710 P.2d 1342, where we stated that:

> The nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties. Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party. The second party then should be compensated for damages resulting from the other's culpable conduct.

*Nicholson*, 710 P.2d at 1348.

I believe there was evidence in this case that Currie, and possibly his employer, acted arbitrarily and unreasonably. His conduct was certainly contrary to the justifiable expectations of the plaintiff. Under the *Nicholson* criteria, there was sufficient evidence of bad faith to overcome a motion for summary judgment by the defendant. I would allow the plaintiff to pursue her bad faith claim in tort and let a jury decide whether she is entitled to damages for that claim.

Even under this Court's decision in *Story*, there was sufficient evidence of bad faith to require submission of this case to a jury. I conclude that the plaintiff satisfied all of the elements in *Story* which this Court held are necessary to support tort damages for bad faith. Specifically, I believe that: (1) a lay-person who is unsophisticated in the technicalities of insurance coverage who goes to a professional licensed agent and relies on representations made by that agent is in an inherently unequal bargaining position;

(2) plaintiff had no basis for questioning any representation that was made to her by someone she presumed to have special knowledge and qualifications for the representations that he made; (3) her purpose for entering into the contract was certainly nonprofit; it was to obtain peace of mind by acquiring business property insurance; (4) ordinary contract damages in this case are not adequate to compensate plaintiff for the experience that has resulted from the defendants' conduct and will not make plaintiff whole for the disruption to her life that has resulted in this case. (Contract damages will not even cover the legal expense that a person in plaintiff's position would normally have incurred just to protect her credit rating); and (5) she was especially vulnerable when she placed her trust in Currie, and he certainly was aware of her vulnerability by the fact that she accepted every one of his misrepresentations at face value.

For these reasons I dissent from the majority's disposition of plaintiff's claim based on the tort of bad faith.

## II. UNFAIR TRADE PRACTICES ACT

I also dissent from that part of the majority opinion which affirms the dismissal of plaintiff's claim under § 33-18-212, MCA, of the Unfair Trade Practices Act.

Section 33-18-212, MCA, provides that:

(1) A person may not willfully collect any sum as premium or charge for insurance, which insurance is not then provided or is not in due course to be provided (subject to acceptance of risk by the insurer) by an insurance policy issued by an insurer as authorized by this code.

18

In this case, plaintiff paid Currie $226 for insurance coverage from July 1, 1984, until June 31, 1985. She did not receive insurance coverage during that period of time. The majority disposed of this claim by observing that according to Currie she was covered during portions of that time based on his authority to bind the company. However, providing her with coverage during a portion of the time that she paid for is not the same as providing her with the coverage that she paid for. Furthermore, there was no written policy ever issued upon which plaintiff could have relied to assert a claim for coverage, had one been necessary. All the record reflects is that in retrospect after a dispute arose regarding an additional premium which Truck Insurance Exchange claimed was due, it asserted that it was bound from July 1, 1984, through September 4, 1984, and again from March 14, 1984, through September 1, 1985.

I conclude that the facts proven in this case would support a cause of action based on a violation of § 33-18-212, MCA. Therefore, I would reverse the District Court's order which dismissed plaintiff's claim under that statute by summary judgment.

_____
Justice

I concur in the foregoing concurrence and dissent of Justice Trieweiler.

_____
Justice