No. 88-428

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

------------------------

JANICE A. NILES,

            Plaintiff and Appellant,

    -vs-

BIG SKY EYEWEAR, a/k/a PROFESSIONAL
EYECARE, LEONARD E. VAINIO, an individual,
and DAVID G. VAINIO, an individual,

        Defendants and Respondents.

------------------------

APPEAL FROM:  District Court of the Second Judicial District,
              In and for the County of Silver Bow,
              The Honorable Mark Sullivan, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Monte D. Beck argued, Bozeman, Montana
            Joe Bottomly argued; Bottomly Law Offices, Great Falls,
            Montana

      For Respondent:

            Moore, O'Connell, Refling & Moon; Christopher L.
            Manos argued, Bozeman, Montana

Submitted:  March 7, 1989

Decided:  March 30, 1989

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendants appeal a $470,000 jury verdict for their former employee Janice A. Niles on her claims of defamation, negligent infliction of emotional distress, wrongful termination, and breach of the covenant of good faith. Plaintiff cross-appeals the District Court's denial of punitive damages and its dismissal of defendant David G. Vainio in his individual capacity. We affirm the judgment in all respects.

The issues are:

1. Did the District Court err in dismissing David Vainio, a partner of Professional Eyecare, from the suit in his individual capacity?

2. Did the court err in striking the plaintiff's claim for punitive damages?

3. Did the court err in denying defendants' motions for a directed verdict and a new trial on defamation?

4. Did the court err in denying defendants' motions for a directed verdict and a new trial on wrongful termination?

5. Did the court err in allowing expert testimony on good faith and fair dealing and in not giving jury instructions on defendants' actions in good faith?

6. Did the court err in denying a new trial after refusing to allow defendants to present evidence of comparable employment?

7. Did the court err in giving a jury instruction on legal cause rather than proximate cause?

8. Did the court err in denying a new trial after refusing to allow certain cross-examination of plaintiff's expert on emotional distress?

9. Did the court err in denying defendants' motions for directed verdict and a new trial on negligent infliction of emotional distress?

Defendants own a chain of optical stores. Dr. Leonard Vainio was responsible for the Bozeman store where, beginning in November 1984, plaintiff Janice A. Niles worked. By April 1986, Niles had

received several wage increases and was acting as manager of the store.

In April 1986, Leonard Vainio told his accountant Gerry Baker that another employee had seen Niles taking money from the till at the Bozeman store. Vainio and Baker went to the police. On May 1, 1986, two police officers made an attempted "sting," purchasing a pair of sunglasses from Niles with marked bills. They saw her put the money into the till, but noted that she did not record the sale on the "day sheet," an omission which Leonard Vainio had led them to believe was important. Based on what they had seen and what they had been told, the officers felt they had probable cause to make an arrest.

At 4:30 that afternoon, Niles was arrested as she was leaving work. She was questioned at the police station for about two hours. The police did not find the marked bills in her possession, but Niles did have a large amount of cash. She explained that most of it was from cashing her husband's paycheck that day and that $60 of it was from the optical store because she was on her way to UPS to pick up a C.O.D. package for the store. Niles was charged with misdemeanor theft of the $12 from the sunglasses. This charge depended upon Leonard Vainio's statements that his records would show $12 missing.

Niles did not return to work at the optical store. Leonard Vainio promoted his girlfriend to manager of the store. The criminal proceedings were eventually dropped when defendants failed to supply the records necessary to support prosecution. Niles was forced to go through the Department of Labor and then judicially-ordered "till-taps" of the defendants' business to get her final paycheck.

At trial, Niles presented testimony by several former employees of Professional Eyecare that she was a good and respected employee and that defendants' money-handling and record-keeping practices were shoddy and haphazard. The optical shop employee who Leonard Vainio claimed had reported seeing Niles take money from

3

the till testified by deposition. She emphatically denied that she ever made such a report to Leonard Vainio. Niles presented evidence of her emotional and economic suffering as a result of this ordeal. In a general verdict, the jury awarded Niles $470,000 in damages.

## ISSUE I

Did the court err in dismissing David Vainio, a partner of Professional Eyecare, from the suit in his individual capacity?

At the close of Niles' case-in-chief, the trial court granted directed verdicts for defendant David Vainio on the issue of his individual liability. Niles argues on appeal that this is error under partnership liability law in Montana.

Under Montana law, a partnership is liable for any wrongful acts of its partners performed in the course of business activity. Section 35-10-305, MCA. Partners are jointly and severally liable for everything chargeable to the partnership under section 35-10-305, MCA. Section 35-10-307, MCA. It was undisputed at trial that David and Leonard Vainio were doing business as a partnership.

There was no evidence that David Vainio was personally involved with any of the wrongful acts claimed by plaintiff. This does not affect his liability as a partner. We hold that the court did not err.

## ISSUE II

Did the court err in striking the plaintiff's claim for punitive damages?

Niles argues that the evidence presented at trial would support submitting the issue of punitive damages to the jury based on the misrepresentations and false information Leonard Vainio gave to the police. She also contends that various other testimony could support a finding of the malice, oppression, and fraud necessary to support punitive damages.

Section 27-1-221, MCA (1985), governs the award of punitive damages in this case. It provides at subsection (1) that punitive

4

damages may be awarded in a noncontract action where the defendant has been guilty of oppression, fraud, or malice, actual or presumed. At subsection (2) it provides that "[t]he jury may not award exemplary or punitive damages unless the plaintiff has proved all elements of the claim for exemplary or punitive damages by clear and convincing evidence." At subsection (4), the statute provides that the plaintiff may not present to the jury evidence of defendant's financial affairs or net worth unless the judge rules that the plaintiff has presented a prima facie claim for punitive damages.

The court made its ruling striking Niles's claim for punitive damages at the close of trial, just before jury instructions were settled. The court stated:

> Our major problem is punitive damages. I don't see a punitive damage case here. You've got a real question of fact to show that there has been actual damages. You have to convince the jury there is a discharge. She hadn't say [sic] she was fired. We didn't hear anybody else say that. See my point? The evidence I have heard here indicates there is some serious question of fact for the jury has to resolve as to what happened. Certainly, you are restricted to what happened up until the time of the firing. The evidence after that time has nothing to do with it. Do you agree with that?
>
> . . .
>
> That is a point you can argue. I don't think it's a punitive damage case and I am granting the motion, punitive damages are out.

In ruling on a motion for directed verdict, the trial court must view the evidence in the light most favorable to the nonmoving party. Mydlarz v. Palmer/Duncan Const. Co. (1984), 209 Mont. 325, 345, 682 P.2d 695, 705. After reviewing the evidence, we cannot say that the District Court erred in ruling that Niles had not presented a prima facie case including clear and convincing evidence of all elements of her claim, as required under the

statute. We therefore hold that the court did not err in striking the claim for punitive damages.

## ISSUE III

Did the court err in denying defendants' motions for a directed verdict and a new trial on defamation?

Defendants contend that Leonard Vainio's statements to the police which are claimed to be defamatory are qualifiedly privileged because they were made in good faith. They argue that the District Court erred in denying their motions for a directed verdict and a new trial on this issue.

Citing the Restatement of Torts and case law from Alaska and Kansas, defendants assert that a qualified privilege exists for a statement made by an employer about an employee for the protection of a lawful business. However, the qualified privilege is waived if it is abused. Restatement (Second) of Torts, Section 599 (1977). Abuse of a qualified privilege is an issue of fact to be decided by the jury. Restatement (Second) of Torts, Section 619 (1977). Defendants did not offer a jury instruction on qualified privilege, instead using the defense that the statements made were true.

This Court has held that an unsolicited complaint to the police is not privileged under section 27-1-804, MCA. Shors v. Branch (Mont. 1986), 720 P.2d 239, 245, 43 St.Rep. 919, 925. Moreover, the record contains substantial evidence that Leonard Vainio waived any conditional privilege to which defendants were entitled by making his statements without good faith. We hold that there was no error on the issue of defamation.

## ISSUE IV

Did the court err in denying defendants' motion for a directed verdict and a new trial on wrongful termination?

Defendants argue that there was no issue of fact regarding any actual termination of Niles and that reliance on a theory of constructive discharge is misplaced because the totality of the circumstances do not support such a claim. However, a doctrine of

constructive discharge has been recognized in Montana. Snell v. Montana-Dakota Utilities Co. (1982), 198 Mont. 56, 643 P.2d 841. It is a question of fact whether by action or inaction an employer has rendered working conditions so oppressive that resignation is the only reasonable alternative. Snell, 643 P.2d at 846.

The jury heard the testimony that Leonard Vainio and his accountant were the instigators of the criminal charge filed against Niles which led to her arrest at her place of work. No speculation is required for the jury to conclude that when an employer causes the arrest of his employee on a charge of theft from the employer that the employee has been constructively fired. It defies human experience to believe that Niles would reappear for work the next workday following her arrest. We hold that the record supports submitting to the jury the question of whether Niles was effectively discharged from employment.

## ISSUE V

> Did the court err in allowing expert testimony on good faith and fair dealing and in not giving jury instructions on defendants' actions in good faith?

Defendants maintain that it was error to allow expert testimony on good faith and fair dealing. Their position is that this invaded the province of the jury. However, this Court has explicitly approved of expert testimony on breach of the covenant of good faith and fair dealing. Crenshaw v. Bozeman Deaconess Hosp. (1984), 213 Mont. 488, 502, 693 P.2d 487, 494. "Fault arising from breach of implied covenant of good faith and fair dealing is not easily comprehensible to the average person." Crenshaw, 693 P.2d at 494.

The defendants also argue that, when read in combination, the instructions given on good faith and fair dealing effectively rendered a directed verdict on the issue. They mention instruction no. 14, which sets forth the elements of proof of breach of the implied covenant of good faith and fair dealing, instruction no. 16, which states that a covenant of good faith and fair dealing

7

existed between Niles and defendants, and instruction no. 26, which describes unjustifiably withholding wages from an employee as against public policy. We find no error. The court properly instructed the jury on the reciprocal duty of good faith and fair dealing between employer and employee.

Finally, defendants argue that the court should have given instructions on whether they acted in good faith in discharging Niles. In instruction no. 21, the jury was properly instructed that:

> [a]ny employment may be terminated at anytime by an employer in the event of any willful breach of duty by the employee in the course of employment or if the employee habitually neglects or is incapable of performing the duties of the employment. However, an employer has a duty to act in good faith and deal fairly in discharging an employee.

We find no error.

## ISSUE VI

Did the court err in denying a new trial after refusing to allow defendants to present evidence of comparable employment?

This issue refers to the court's exclusion of evidence about defendants' offer to re-employ Niles. The offer was made in February or March of 1987, before litigation had commenced but while the complaint was being drafted. The evidence was excluded pursuant to Niles's motion in limine. Defendants argue that because the offer was made prior to the filing of the lawsuit, it was not part of compromise negotiations. They claim that the trial court abused its discretion in prohibiting testimony on the offer of re-employment.

Rule 408, M.R.Evid., provides that offers or acceptances in compromise of a disputed claim are not admissible into evidence to prove liability for or invalidity of the claim or its amount. The rule does not clarify whether litigation must be in progress before it takes effect. In this case, at the time the job offer was made, both parties had hired attorneys and a draft of the complaint had

8

been sent to defendants' attorney. It was certainly clear at that time that Niles had a claim against defendants. We conclude that this offer in compromise was within the purview of Rule 408, M.R.Evid. Therefore, the court did not err in excluding evidence about it.

## ISSUE VII

Did the court err in giving a jury instruction on legal cause rather than proximate cause?

Instruction no. 11 to the jury stated that "[a] legal cause of the injury is a cause which is a substantial factor in bringing it about." Defendants argue that the jury should have been instructed on the "but for" test instead of the "substantial factor" test because only one defendant remained after David Vainio was dismissed as a defendant.

It was defendants' position at trial that this was a joint tortfeasor situation involving both defendants and the police. They argued that Niles's damages were caused by her arrest. The "substantial factor," or legal cause, test is appropriate where the acts of each of several persons acting separately might have been sufficient to produce the result. Young v. Flathead County (Mont. 1988), 757 P.2d 772, 777, 45 St.Rep. 1047, 1053. We conclude that giving the instruction on legal cause was not error.

## ISSUE VIII

Did the court err in denying a new trial after refusing to allow certain cross-examination of plaintiff's expert on emotional distress?

Dr. Seitz, a clinical psychologist, examined Niles one month prior to trial. He testified on the issue of her emotional and mental distress resulting from defendants' actions. The court prohibited defendants from cross-examining Dr. Seitz on a portion of his notes which indicated that Niles had told him that the daughter of Baker, the accountant, had tried to get into Niles's house twice. Defendants argue that Dr. Seitz's notes on the subject of Baker's daughter go to the bases for his conclusion and to Niles's credibility.

9

Determination of relevance of testimony, including expert testimony, is subject to the trial court's discretion. Cash v. Otis Elevator Co. (1984), 210 Mont. 319, 332, 684 P.2d 1041, 1048. In examining the record, we do not find that the District Court abused its discretion in prohibiting the question about the statement regarding Baker's daughter. Neither Baker's daughter nor Baker were defendants. The statements about attempted entries were not brought up in direct examination nor did defendants' counsel make an offer of proof of what the evidence would show.

Defendants also argue that they should have been allowed to cross-examine Dr. Seitz on the effect on Niles if she had been re-employed by them. That matter is disposed of in the discussion under issue VI above. We hold that the lower court did not err in refusing to allow the desired cross-examination of Dr. Seitz.

## ISSUE IX

Did the court err in denying defendants' motions for directed verdict and a new trial on negligent infliction of emotional distress?

Defendants argue that emotional distress is not a distinct cause of action in this case and that the conduct of Leonard Vainio does not form an adequate basis for compensation for emotional distress. They maintain that the court should have allowed a directed verdict on this issue. They also argue that the tort of negligent infliction of emotional distress can only be claimed by a plaintiff other than the victim. Defendants are mistaken in their understanding of the law of negligent infliction of emotional distress.

Where there is evidence of substantial invasion of a legally protected interest which causes a significant impact upon the person of the plaintiff, emotional distress is compensable without showing of physical or mental injury. Johnson v. Supersave Markets, Inc. (1984), 211 Mont. 465, 473, 686 P.2d 209, 213. Niles presented evidence that she was depressed and withdrawn after this incident. Dr. Seitz testified that he diagnosed her as suffering from post-traumatic stress disorder. Niles's husband testified

10

that her personality had changed and that their marriage had suffered as a result of defendants' actions. We conclude that the District Court did not err in denying defendants' motions on the cause of action for negligent infliction of emotional distress.

We affirm the judgment on the verdict against Leonard E. Vainio as an individual and the partnership of Leonard E. Vainio and David G. Vainio under the name of Big Sky Eyewear, a/k/a Professional Eyecare.

J. A. Turnage
Chief Justice

We concur:

John Conway Harrison

L. C. Gulbrandson

William E. Hunt

John C. Sheehy

Justices