No. 98-476

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 213

295 Mont. 495

986 P.2d 413

MARK HALE,

Plaintiff and Appellant

v.

CITY OF BILLINGS, MONTANA,

POLICE DEPARTMENT, and BILLINGS

TELECOMMUNICATIONS, INC.,

Defendants and Respondents

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary L. Beiswanger, Billings, Montana

For Respondents:

Harlan B. Krogh, Moulton, Bellingham, Longo & Mather, Billings, Montana (City of Billings Police Department); Calvin J. Stacey, Stacey & Walen, Billings, Montana (Billings TCI, Inc.)

Submitted on Briefs: February 4, 1999

Decided: September 14, 1999

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

1. ¶Plaintiff and Appellant Mark Hale (Hale) brought defamation and negligence claims against Defendants and Respondents City of Billings Police Department (Billings Police) and Billings Telecommunications, Inc. (TCI). The Thirteenth Judicial District Court, Yellowstone County, granted summary judgment for both Defendants and Hale appealed, asserting that publication of his photo and personal information by Billings Police and the subsequent broadcast by TCI of this information on its cable program "Yellowstone County's Most Wanted" along with the terms "fugitive," "most wanted," and "armed and dangerous" were defamatory. Hale also asserted that Billings Police were negligent when they failed to timely inform TCI of Hale's arrest and thereby prevent further broadcast of the information. We reverse and remand.

2. ¶We address the following issues on appeal:

3. ¶1. Did the District Court err by granting both Defendants' motions for summary judgment on the issue of defamation with respect to the falsity of the statements made?

4. ¶2. Did the District Court err in granting Billings Police's motion for summary judgment on the issue of defamation with respect to Billings Police's claimed privilege?

5. ¶3. Did the District Court err in granting Billings Police's motion for summary judgment on the issue of negligence by finding that Billings Police owed no duty to Hale?

## Background Facts

1. ¶On April 2, 1995, a complaint was filed in Billings City Court charging Appellant Mark Hale with misdemeanor domestic abuse following a March 25, 1995 incident between Hale and his then estranged wife, Kathryn, at one of their places of business in Billings. A warrant was issued for Hale's arrest the next day. Several attempts by the investigating officer to serve the warrant at Hale's personal residence proved unsuccessful. The record indicates that the officer admittedly

refrained from attempting to execute the warrant at Hale's known places of business during the officer's day-time shift, not wishing to "embarrass" Hale. Also, as a matter of Billings Police domestic abuse arrest practice, the investigating officer made no attempt to contact Hale by telephone, mail, or in any other way alert Hale that a complaint had been filed or that a warrant had been issued. Consequently, Hale claims he remained unaware for the ensuing ten months prior to his arrest that Kathryn had called the police, that a complaint had been filed against him, or that an outstanding warrant for his arrest had been issued. Hale's arrest at his home occurred shortly after midnight on January 24, 1996.

2. ¶The parties agree that the arrest most likely resulted from the broadcast of Hale's name, photograph, physical description, and charge against him on TCI's "Yellowstone County's Most Wanted" cable television program. The program, which aired for approximately eight-to-nine minutes four times daily, featured a "voice-over" and still photos of Hale, and other persons similarly depicted. The voice-over informed viewers that the persons shown were "fugitives" against whom a valid arrest warrant was in effect, that viewers should not attempt to apprehend any of the people as they "may be armed and dangerous," that viewers should call the Billings Police with any information regarding "these fugitives," and that all persons depicted on "Yellowstone County's Most Wanted" program were presumed innocent until proven guilty in a court of law.

3. ¶The information regarding Hale, which was provided to TCI by Billings Police on January 9, 1996, first aired January 22, 1996, and continued airing until January 29, 1996--for five, perhaps six, viewing days after Hale had been arrested. On January 30, 1996, following several requests by Hale, Billings Police notified TCI personnel that Hale had been arrested and that his photo and related information should be removed from the program. By then, however, the one-week air time had expired and the use of Hale's photo and information had already been discontinued.

4. ¶Hale filed a complaint in the Thirteenth Judicial District Court, Yellowstone County, alleging that both the Billings Police and TCI defamed him with his inclusion in the "Yellowstone County's Most Wanted" program and that the Billings Police were negligent for not timely notifying TCI of Hale's arrest, which resulted in the post-arrest airing of information pertaining to Hale. On June 26, 1998, the District Court granted both Defendants' motions for summary judgment. Hale appealed.

## Standard of Review

1. ¶Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions, and any affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a mater of law. Rule 56(c), M.R.Civ.P. To sustain a motion for summary judgment, the moving party must establish that no genuine issues of material fact exist which would necessitate a trial of the issues presented. *Berens v. Wilson* (1990), 246 Mont. 269, 271, 806 P.2d 14, 16. Upon meeting this initial burden, the burden shifts to the party opposing the motion, who must show that an issue of material fact does exist. *Sprunk v. First Bank System* (1992), 252 Mont. 463, 466, 830 P.2d 103, 104. This Court reviews a summary judgment decision under the same standard as the district court in making the decision. *Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214.

## Issue 1.

1. ¶ Did the District Court err by granting both Defendants' motions for summary judgment on the issue of defamation with respect to the falsity of the statements made?

1. ¶Appellant Hale argues that the District Court erred in granting summary judgment to Billings Police and TCI based on the conclusion that the information Billings Police provided TCI and the information TCI broadcast to the public was either truthful, or, if not truthful, then constitutionally protected, and therefore not defamatory as a matter of law.

2. ¶ Pursuant to § 27-1-802, MCA, defamatory libel is:

[F]alse and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule or obloquy or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation.

Thus, as a first step toward summary judgment, the moving parties here must establish the absence of genuine issues of material fact relating to the truthfulness of the publications in question.

1. ¶Montana's Constitution provides a necessary beginning reference point to this discussion, a point not directly raised by the parties but, nevertheless, present within the parties' cited authority. "In all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and the jury, under the direction of the court, *shall determine the law and the facts*." Art. II, § 7 Mont. Const. (emphasis added).

2. ¶This Court, however, has distinguished this provision by finding that "there is no absolute prohibition against granting summary judgment in libel cases." *Williams v. Pasma* (1982), 202 Mont. 66, 72, 656 P.2d 212, 215 (citing *Griffen v. Opinion Publishing Co.* (1943), 114 Mont. 502, 138 P.2d 580). Not since *Griffen* was decided, however, has the specific interplay between judge and jury been adequately addressed by this Court. In light of the District Court's summary judgment memorandum and order, which include conclusions of law as well as fact on a number of issues that seemingly conflict with Montana's Constitution, it is imperative that we at this time determine the scope of constitutional directives found in Article II, Section 7.

3. ¶The Restatement (Second) of Torts has been referenced as a reliable authority in myriad defamation cases in Montana, and, in fact, provided the foundation for the rules regarding the roles of judges and juries in *Griffen. See, e.g., Griffen v. Opinion Publishing Co.* (1943), 114 Mont. 502, 138 P.2d 580, *overruled on other grounds by State v. Helfrich* (1996), 277 Mont. 452, 922 P.2d 1159; *Granger v. Time, Inc.* (1977), 174 Mont. 42, 568 P.2d 535; *Sacco v. High Country Independent Press, Inc.* (1995), 271 Mont. 209, 896 P.2d 411. The Restatement acknowledges that while such states as Montana "provide that in libel cases the jury shall determine the law . . . . it is still the province of the court" to determine certain questions of law. Restatement (Second) of Torts § 614 cmt. c. (1977). It is therefore crucial to the determination of the issues before us on appeal that we establish conclusive guidelines that accord with the directives of both Article II, Section 7 and the Restatement for this and future cases.

4. ¶To this end, we find persuasive the rule that, "subject to the control of the court whenever the issue arises, the jury determines whether . . . the matter was true or false." Restatement (Second) of Torts § 617. The Restatement provides one caveat to this rule: "if the evidence is so overwhelming that any other conclusion would be unreasonable," the court is afforded the discretion to make a proper finding. Restatement (Second) of Torts § 617 cmt. a. In contrast, the Restatement provides that the court, as a preliminary finding, must determine "whether a communication is capable of bearing a particular meaning; and . . . whether the meaning is defamatory." Restatement (Second) of Torts § 614.

5. ¶Applying the foregoing to the issue of whether the District Court's conclusion that the information Billings Police provided TCI was "essentially truthful," we conclude that Article II, Section 7 of the Montana Constitution, coupled with Sections 614 and 617 of the Restatement, is dispositive. Unless the evidence is "so overwhelming that any other conclusion would be unreasonable," the issue of whether the statements were true or false is a determination for the jury alone to make. *See also Hickey v. Settlemier* (Or. App. 1993), 841 P.2d 675, 678 (following Restatement (Second) of Torts, § 617(b), and concluding that the truth or substantial truth of a defendant's statement is a question of fact for the jury and summary judgment is inappropriate).

6. ¶The record here indicates that Billings Police provided TCI with Hale's name, physical description, photo, and crime charged, all of which at the time--January 9, 1996--was seemingly true information on its face. However, reviewing the evidence in the record as a whole, we cannot agree that "any other conclusion" as to the truth or falsity of the statements would be unreasonable.

7. ¶Hale contends, and Respondents do not deny, that the information Billings Police provided to TCI, along with similar information of other persons subject to outstanding arrest warrants, was offered on a sheet upon which the phrase "most wanted" was printed. Pleadings by Respondent Billings Police indicate that they provided information to create a "most wanted" list for dissemination to the public. Furthermore, the record indicates that Billings Police, in assisting TCI with its "Crimestopper" program, were to some extent aware that the broadcast would portray Hale as a potentially armed and dangerous fugitive, who in fact was one of the "most wanted" criminal suspects in Yellowstone County. Unlike circumstances where members of the press access public records, TCI's crime prevention program *requested* that the Billings Police supply names and information involving their *most-wanted fugitives* in Yellowstone County, so that ordinary citizens could assist the police in locating these suspects for apprehension. Therefore, the question can be asked, "Based on this solicitation, was the information Billings Police provided TCI false?" The answer to this question, gathered from the entirety of the record before this Court, is far from conclusive.

8. ¶The record indicates that Hale's name was chosen randomly from the three-to-five thousand outstanding arrest warrants on file with Billings Police and that his whereabouts were known at all times following the issuance of the arrest warrant, suggesting perhaps that, under any ordinary, plain-meaning definitions of the terms, he was neither a "most-wanted" suspect, nor a "fugitive" from justice. It is apparent from the record that the evidence is not so overwhelming that the statements were

"essentially truthful," so as to preclude a jury from determining otherwise. Thus, we hold that summary judgment as to this issue was improper, and should be determined by the jury, with proper instruction from the court.

9. ¶As for whether statements made in TCI's broadcast were constitutionally protected opinion-- the second conclusion reached on this issue by the District Court--we conclude that this is a matter which a court can and should rightfully determine upon a motion for summary judgment. Such a determination, pursuant to Restatement (Second) of Torts § 617, goes to whether the statement is capable of bearing a defamatory meaning, and whether the meaning is in fact defamatory.

10. ¶The District Court determined that the information broadcast by TCI, namely the references to "may be armed and dangerous," "most wanted,"and "fugitive," if not entirely accurate were, nevertheless, constitutionally protected under First Amendment analysis as statements of "opinion as opposed to factual assertions," and therefore could not, as a matter of law, be deemed defamatory. All parties to this action refer this Court's attention to its own analysis in *Roots v. Montana Human Rights Network* (1996), 275 Mont. 408, 913 P.2d 638, where we established the following rule pertaining to opinion speech derived from the United States Supreme Court decision in *Milkovich v. Lorain Journal Co.* (1990), 497 U.S. 1, 100 S.Ct. 2695, 111 L.Ed.2d 1:

The First Amendment protects statements of opinion on matters of public concern where they do not contain a provable false factual connotation or where they cannot reasonably be interpreted as stating actual facts about an individual.

*Roots, 275 Mont. at 412, 913 P.2d at 640 (citing Milkovich, 497 U.S. at 18-20, 100 S.Ct. at 2705-06). Although crime prevention is certainly a matter of public concern, that the "opinion privilege" would be raised in this case, and then ruled on as a matter of law by the District Court, necessitates the following elaboration and clarification of our analysis and rule found in Roots.*

1. ¶The origins of constitutionally protected opinion can be traced, of course, to Supreme Court Justice Holmes' notion of the "marketplace of ideas." *See Abrams v. United States* (1919), 250 U.S. 616, 630, 40 S.Ct. 17, 22, 63 L.Ed. 1173 (dissenting opinion). Thus, ideas expressed as opinions, although potentially defamatory, may be corrected through discussion rather than by the courts. *See Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 339-40, 94 S.Ct. 2997, 3007 (stating "[h]owever pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of ideas. But there is no constitutional value in false statements of fact").

2. ¶In reversing summary judgment in favor of an Ohio newspaper, the *Milkovich* Court reviewed the various protections afforded under its First Amendment

jurisprudence and consequently rejected the direction taken by many lower courts, that, under *Gertz* dictum, opinions as opposed to facts require an "additional separate constitutional privilege." *Milkovich*, 497 U.S. at 21, 110 S.Ct. at 2707. Two of the protections identified by the *Milkovich* Court were melded by this Court into the above *Roots* rule. *See*, *e.g.*, *Milkovich*, 497 U.S. at 19-20, 110 S.Ct. at 2706 (citing *Philadelphia Newspapers, Inc., v. Hepps* (1986), 475 U.S. 767, 106 S.Ct. 1558, 89 L.Ed.2d 783, for the proposition that statements relating to matters of public concern containing a provably false factual connotation do not receive full constitutional protection; and, *Hustler Magazine v. Falwell* (1988), 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41, for the proposition that statements reasonably interpreted as stating actual facts about an individual--and which are therefore not "imaginative expression" or "rhetorical hyperbole"--receive no constitutional protection).

3. ¶The misguided direction identified by the *Milkovich* Court was precisely the path followed by the District Court here. The trial court erred in relying on an Illinois appellate court decision that followed a pre-*Milkovich* federal circuit court decision. *See Gist v. Macon County Sheriff's Dep't* (Ill. App. 1996), 671 N.E.2d 1154 (following test derived from *Ollman v. Evans* (D.C. Cir. 1984), 750 F.2d 970).

4. ¶In further reliance on *Milkovich* as a touchstone, we now conclude that it is error for a court to create an "artificial dichotomy" by distinguishing statements of opinion from statements of fact, and thereby granting unqualified immunity to the former. *Milkovich*, 497 U.S. at 19, 110 S.Ct. at 2706. Such a dichotomy was not our intent in *Roots*. In order to further clarify the rule stated there, we turn to the Restatement approach and conclude: if an opinion is not based on disclosed facts, and as a result creates the reasonable inference that the opinion is based on undisclosed defamatory facts, such an opinion is not afforded constitutional protection. *See* Restatement (Second) of Torts § 566 *and* cmt. c. (1977).

5. ¶We now apply the *Roots* rule, along with the foregoing clarification, to the alleged defamatory "opinion" statements here. In a close paraphrase of the analysis in *Milkovich*, when the Billings Police and TCI informed the public, essentially, "In our *opinion*, we think Mark Hale is a most wanted fugitive, who may be armed and dangerous," the statement implied a knowledge of facts far beyond those disclosed which may have reasonably led viewers to conclude that Hale *was* most wanted, *was* a fugitive, and *was* possibly armed and dangerous. *See Milkovich,* 497 U.S. at 18-19, 110 S.Ct. at 2705-06. Such statements of opinion can cause damage, pursuant to § 27-1-802, MCA, and are actionable, under *Roots*, if they contain a provably false factual connotation or can reasonably be interpreted as stating actual facts about an individual.

6. ¶The term "armed and dangerous," although qualified with "may be," nevertheless implies to viewers that there are undisclosed, potentially defamatory facts upon which the opinion is based. Had the program stated that Hale was wanted for the commission of a crime involving a weapon, such as armed robbery, or "was last seen carrying a sawed-off shotgun," then the statement would have been based on disclosed facts, and therefore could not have been found defamatory. Such is not the case here. Hale never stood accused of using a weapon and, ten months following the issuance of the warrant, Billings Police and TCI apparently had no idea one way or the other whether Hale even possessed a gun, let alone whether he may have been armed. Moreover, their "opinion" that Hale was dangerous is belied by the undisclosed fact that the Billings Police knew for months Hale's whereabouts and the nature of the offense with which was he charged, but made little effort to apprehend him. Consequently, Hale could demonstrate the falsity of the implied factual connotation created in the viewers' minds.

7. ¶The term "most wanted" is offered for public consumption for a similar singular purpose: to warn that the person in question, above all other ordinary wanted persons, is the focus of intense scrutiny by law enforcement personnel, thus providing a clear connotation that the person has been identified as such based on undisclosed facts. This connotation is rendered all the more acute when coupled with the instructions to the public that police should be notified immediately, and that the suspect may be armed and dangerous. Such a factual connotation, in turn, may be proven false. The record indicates that neither the Billings Police nor TCI used any method whatsoever for determining who is or is not deserving of being identified as one of the most wanted criminal suspects in Yellowstone County. Respondents do not deny that names for "Yellowstone County's Most Wanted" program were chosen entirely at random.

8. ¶Likewise, the term "fugitive" suggests but one urgent message to the intended hearer: the suspect has allegedly committed a crime, has eluded capture, and is now fleeing justice. Indeed, this is the essential purpose of all such Crimestopper broadcasts, to legitimately assist the police in apprehending suspects whose whereabouts are unknown. One common definition of the term describes a person who is "[r]unning away or fleeing, as from the law." American Heritage Dictionary 538 (2d College ed. 1985). Black's Law Dictionary similarly defines fugitive as "[o]ne who flees; used in criminal law with the implication of a flight, evasion, or escape from arrest, prosecution, or imprisonment." Black's Law Dictionary 671 (6th ed. 1990). Furthermore, a more specific definition of "fugitive from justice" describes "[a] person who, having committed a crime, flees from jurisdiction of

court where crime was committed or *departs from his usual place of abode and conceals himself within the district*." Black's Law Dictionary 671 (6th ed. 1990) (emphasis added). Once offered for public consumption, the term inherently connotes that police are in pursuit of the person, and that the person is, with knowledge of the pursuit, actively avoiding confrontation or capture by either fleeing or hiding. Such a factual connotation can be proven as either true or false, and, in order for Respondents to prevail for the purposes of summary judgment here, must be unequivocally resolved in their favor. The record does not bear this out.

9. ¶As previously stated, the record indicates that Hale's whereabouts were known at all times following the issuance of the arrest warrant, and that he was unaware that a warrant against him had been issued. Furthermore, the post-arrest broadcast contained factual discrepancies; namely, that a valid warrant for Hale's arrest remained in effect, and that Hale remained at large as a most-wanted fugitive. Therefore, providing constitutional protection under the rule stated in *Roots* to the statements made during TCI's broadcast would be in error. Without such protection, genuine issues of material fact regarding the falsity of the statements made during the broadcast remain in contention, and summary judgment in favor of Respondents was improper.

## Issue 2.

1. ¶ Did the District Court err in granting Billings Police's motion for summary judgment on the issue of defamation with respect to Billings Police's claimed privilege?

1. ¶The second element of libel from which Billings Police must dispel the presence of disputed material facts is whether or not the statements made to TCI were privileged. The District Court ruled, as a matter of law, that the communication made by Billings Police to TCI was privileged as either a proper discharge of an official duty or concerned a judicial proceeding in accordance with § 27-1-804, MCA. If privileged, truth or falsity of the statement is irrelevant and, consequently, a plaintiff cannot recover damages under a defamation theory.

2. ¶Pursuant to our prior discussion, we conclude that, in accordance with Article II, Section 7 of the Montana Constitution, determination of whether a publication is privileged is a question of law for the court. Furthermore, this determination may be reached by the court only when facts are not in dispute. *See Rasmussen v. Bennett*

(1987), 228 Mont. 106, 110, 741 P.2d 755, 758; Restatement (Second) of Torts § 619 cmt. a. (1977). However, subject to the control of the court, the jury determines whether the defendant abused a conditional privilege. *See* Restatement (Second) of Torts § 619.

3. ¶Section 27-1-804, MCA, governs whether a communication is privileged. The relevant portion of the statute provides:

**What communications are privileged. A privileged publication is one made:**

(1) in the proper discharge of an official duty;

(2) in any legislative or judicial proceeding or in any other official proceeding authorized by law;

. . .

(4) by a fair and true report without malice of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

1. ¶The first subsection, (1), does not explicitly confer an "absolute" or "conditional" privilege to a party. In accordance with the Restatement (Second) of Torts, if a privilege is absolute the protection once given cannot be lost through abuse of the privilege. *See Skinner v. Pistoria* (1981), 194 Mont. 257, 263, 633 P.2d 672, 676. In such an event, whether the discharge is "proper" is irrelevant to a court's inquiry. *See*, *e.g.*, Restatement (Second) of Torts §§ 585-592A (1977). Conditional or "qualified" privileges, on the other hand, may be lost as a result of abuse, such as reckless disregard for the truth, knowledge that the matter is false, or other forms of actual malice. *See*, *e.g.*, Restatement (Second) of Torts §§ 594-605A (1977).

2. ¶We have held that, pursuant to § 27-1-804(1), MCA, the discharge of an official duty, one which requires a statutory mandate from the legislature, confers an "absolute" privilege and thereby an absolute defense to a libel action. *See Storch v. Board of Directors* (1976), 169 Mont. 176, 181-82, 545 P.2d 644, 647-48; *Small v. McRae* (1982), 200 Mont. 497, 519, 651 P.2d 982, 993-94. These holdings, we believe, accord with the principles expressed in the Restatement (Second) of Torts § 592A, which states that an absolute privilege may be invoked by a party who is required by law to publish defamatory matter. These holdings, however, in

concluding that *only* an absolute privilege is available, do not entirely mesh with the precise language of § 27-1-804(1), MCA. Stating that the discharge must be "proper" implies that an "improper" discharge could result in the loss of a privilege, a condition not applicable to an absolute privilege. Pursuant to the Restatement (Second) of Torts, such a privilege is conditional, or, as they are often referred to in Montana case law, "qualified."

3. ¶Conceivably, a court could determine that an "official duty" exists in the sphere of employment that is not mandated by the legislature. For example, an "official duty" of a corporate officer could result in a defamatory publication regarding an employee. If so, then the privilege would be conditional, because the party would not be violating statutory mandate by failing to publish the statement, but publication nevertheless could be an "official" requisite of the person's employment. Although this Court has not ruled conclusively on this point, the issue was recognized in *Niles v. Big Sky Eyewear* (1989), 236 Mont. 455, 771 P.2d 114, *overruled on other grounds by Sacco v. High Country Independent Press, Inc.* (1995), 271 Mont. 209, 896 P.2d 411:

Citing the Restatement of Torts and case law from Alaska and Kansas, defendants assert that a qualified privilege exists for a statement made by an employer about an employee for the protection of a lawful business. However, the qualified privilege is waived if it is abused. Restatement (Second) of Torts, Section 599 (1977). Abuse of a qualified privilege is an issue of fact to be decided by the jury. Restatement (Second) of Torts, Section 619 (1977). Defendants did not offer a jury instruction on qualified privilege, instead using the defense that the statements made were true.

This Court has held that an unsolicited complaint to the police is not privileged under section 27-1-804, MCA. *Shors v. Branch* (Mont. 1986), 720 P.2d 239, 245, 43 St.Rep. 919, 925. Moreover, the record contains substantial evidence that Leonard Vainio waived any conditional privilege to which defendants were entitled by making his statements without good faith. We hold that there was no error on the issue of defamation.

*Niles, 236 Mont. at 461, 771 P.2d 117. Thus, the "proper" element found under § 27-1-804 (1), when a conditional privilege is evidenced by the record, requires a factual determination. Again, we look to Article II, Section 7 and the Restatement (Second) of Torts for guidance. Section 619 of the Restatement provides that "subject to the control of the court whenever the issue arises, the jury determines whether the defendant abused a conditional privilege." The Restatement provides the following relevant caveat: the jury*

*determines this issue "unless the facts are such that only one conclusion can reasonably be drawn." Restatement (Second) of Torts, § 619 cmt. b. Accordingly, we conclude that the determination of whether the discharge of a non-statutory "official duty" is proper, when facts are in dispute as to its propriety, is a matter that should, under Montana's constitutional directive, be decided by the jury.*

1. ¶The District Court here did not find, as a matter of law, that the privilege invoked by Billings Police was either an absolute or conditional privilege, as it should have, nor is there any indication by any party that the legislature has mandated that the police provide information regarding arrest warrants to crime prevention cable programs. Absent a mandate by law, which to our knowledge there is not, the privilege is at best conditional, based on the premise that in its "official duty" to prevent crime, Billings police enlisted the help of TCI in apprehending criminals. *See* Restatement (Second) of Torts § 598 (communication to one who may act in the public interest). Billings Police, in fact, indicate that one of its officer's "official duties" included providing TCI with the names of individuals who had outstanding arrest warrants.

2. ¶Upon remand, if the court finds that such a conditional privilege exists, then it is a matter for the jury to determine whether the discharge of the official duty--here, all statements provided to TCI by Billings Police--was "proper" to the extent Billings Police did not abuse the privilege. Hale argues that the dissemination of such information runs contrary to the policy expressed in the Montana Criminal Justice Information Act, §§ 44-5-103 and 301-303, MCA. In turn, Billings Police contend that such dissemination is permissible, and therefore proper, pursuant to §§ 44-5-103 (12) and 301. These obvious conflicting contentions go to whether a conditional privilege was subsequently abused. We do not believe that "only one conclusion can reasonably be drawn," from these facts and therefore determine that granting summary judgment based on the conclusion that Billings Police enjoyed a privilege pursuant to the proper discharge of an official duty was improper.

3. ¶As for whether Billings Police's statements to TCI were made in a "judicial proceeding," pursuant to § 27-1-804(2) and (4), MCA, and therefore privileged, we turn to this Court's decision in *Sacco v. High Country Independent Press, Inc.* (1995), 271 Mont. 209, 896 P.2d 411. In *Sacco*, we adopted the Restatement (Second) of Torts approach to this issue verbatim and determined "statements made by the police . . . as to the facts of the case or the evidence expected to be given are *not yet part of the judicial proceeding . . . .* and are not privileged." *Sacco*, 271 Mont. at 240, 896 P.2d at 430 (citing Restatement (Second) of Torts § 611 cmt. h.

(1977) (emphasis added)).

4. ¶Respondents' reliance on our holding in *Cox v. Lee Enterprises, Inc.* (1986), 222 Mont. 527, 723 P.2d 238, which was a civil matter, is misplaced. In *Cox*, we determined that civil pleadings, once filed, become part of the "judicial proceeding" and subsequent publication of their contents by the press afforded its members the conditional privilege under § 27-1-804(4), MCA. *Cox*, 222 Mont. at 530, 723 P.2d at 240. Accordingly, the holding in *Cox* extends to subsection (2), which also turns on whether the communications were in a judicial proceeding. *See also Skinner v. Pistoria* (1981), 194 Mont. 257, 263, 633 P.2d 672, 676 (holding that subsection (2) of § 27-1-804 confers an absolute privilege). Therefore, Respondent TCI's argument on appeal, that it, too, should be afforded a privilege is likewise without merit. Consequently, the District Court's determination, as a matter of law, that statements made to TCI by Billings Police were privileged publications made in a judicial proceeding was in error, and summary judgment as to this issue was improper.

## Issue 3.

1. ¶ Did the District Court err in granting Billings Police's motion for summary judgment on the issue of negligence by finding that Billings Police owed no duty to Hale?

1. ¶Hale argues that the District Court erred in determining that Billings Police owed no duty to him regarding timely notification to TCI of his arrest. We agree with Hale.

2. ¶Under § 28-1-201, MCA, "[e]very person is bound, without contract, to abstain from injuring the person or property of another or infringing upon any of his rights." It is well within the reasonable limits of the foregoing statute that informing cable television viewers that a valid warrant for a person's arrest exists and stating that the person is a most-wanted fugitive who may be armed and dangerous could, potentially, injure the person in question once the information is no longer accurate. Thus, a duty of reasonable care arises from the dissemination of such information. Consequently, Billings Police, in responding to TCI's solicitation for arrest warrant information, and in light of the nature of the crime prevention program, owed a duty to Hale to reasonably notify TCI of his subsequent arrest to prevent any potential harm.

3. ¶The record indicates that Billings Police were aware that such a duty existed. For example, a November 3, 1995 letter from Billings Police to TCI acknowledges the

need to "properly" manage the dissemination of information "[i]n light of concerns recently expressed." The letter further describes suggested guidelines, such as "once a warrant is served on a person featured on the program the Billings Police Department will notify [TCI] and the picture should be removed or marked within 12 hours." The letter also suggests that Billings Police would "attempt to limit the types of arrest warrants to be featured to serious criminal offenses." In response, TCI, in a letter dated November 15, 1995, stated that upon apprehension, the police could notify TCI via fax so that an "apprehended" sign could be placed over the person's photo. The record indicates that such steps were never taken, and that Hale, himself, requested that Billings Police remove his photo and information from the program shortly after his arrest. The record further indicates that the subsequent request by Billings Police to TCI that the information in question be removed from the program did not occur until January 30, 1996, at least one day after the airing had ceased.

4. ¶In light of the foregoing, material issues of fact remain as to what constituted a "timely" notification in accordance with the duty owed, and whether Billings Police breached this duty. Therefore, summary judgment on this issue was improper.

5. ¶The order of the District Court is reversed and this case is remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER