No. 02-046

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 214

TAMMY VonLUTZOW,

     Plaintiff and Appellant,

  v.

LARRY LEPPEK,

     Defendant and Respondent.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 2000-105,
Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     James A. Manley, Manley Law Firm, Polson, Montana

     For Respondent:

     (No Appearance)

Submitted on Briefs:  June 27, 2002

Decided:   August 18, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Tammy VonLutzow (Tammy) filed a claim in the Lake County District Court, seeking repayment of over $17,000 allegedly provided as loans to Larry Leppek (Larry). The District Court held Tammy was owed only $1,000, concluding that she failed to prove that Larry promised to repay the rest of the funds.  Tammy appeals.  We reverse and remand for a new trial.

## ISSUES

¶2      Tammy presents the following issues on appeal:

1.  Did the District Court violate Rule 408, M.R.Evid., when it admitted Defendant's Exhibit A, a letter Tammy wrote to Larry seeking to settle their financial differences?

2.  Did the District Court err in denying recovery to Tammy because she failed to show there was an agreement to repay the $15,000 on a specific date or in a specific manner?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      Because our decision turns on the evidentiary question, we limit our recounting of the facts to those relevant to that question.

¶4      Tammy had been acquainted with Larry since 1990 when he did carpentry work on the building she owned in Whitefish with her husband.  After her husband's death in March 1999, Tammy began a personal relationship with Larry.  Over the course of the brief relationship, money changed hands frequently.  At times Larry helped Tammy with bills, and more often, Tammy transferred relatively large sums to Larry, including a check for $1,200, and another for $15,000.  Tammy contends that the bulk of the money she gave to Larry was

understood to be a loan. Larry, on the other hand, claims that these monies were provided as payment for services he provided to Tammy.

¶5     Tammy asserts that the $1,200 check she wrote to Larry on August 25, 1999 was a down payment for her purchase of Larry's RV, where she lived with her son for a few months. The check was marked "RV-down payment" in the memo line and Larry did transfer the RV title to Tammy. Tammy subsequently transferred the title back to Larry, allegedly under duress, and thus she is seeking repayment of the $1,200.

¶6     Larry denied that this money was a down-payment for the RV. He testified that the $1,200 was ". . . as part of her rent thing." Larry claimed Tammy had agreed to pay him rent of $500 per month for two months, as well as $200 to store some of her personal belongings in one of the empty houses he was building. Larry further testified that Tammy was willing to pay such rent, despite the fact that the RV was not hooked up to electricity, heat, sewage or water.

¶7     In December 1999, Tammy sold her property in Whitefish and netted $47,000. She testified that Larry pressured her to give him the sale proceeds, offering–in return–to transfer to her title to a 5-acre parcel of land he owned. Because Larry provided no paperwork to protect her, Tammy declined to give Larry the sum of her sale proceeds. Rather, she testified, she agreed to loan him $15,000. She wrote him a $15,000 check on December 16, 1999.

¶8     Larry claims that the $15,000 check was money Tammy owed him, not a loan. Regarding Tammy's debts to him, Larry testified:

3

She gave me $15,000 for the money that I had loaned her, the things that I had done, the rent for staying out there in the trailer, all kinds of stuff. She gave me $15,000 at the completion of the sale of her building for the money I loaned her and rents and storage and what have you; you know, money I had loaned her and stuff.

On direct examination, Larry testified that he had kept a ledger for the amounts Tammy purportedly owed him. On cross-examination, he admitted there was no ledger, but " . . . it was kind of just in the head." He testified, for example, that Tammy's late husband owed him $3,500 for carpentry work done years before. Tammy had never heard about this debt and did not believe it was valid.

¶9    In an effort to settle their dispute and recoup some portion of the money she had given to Larry, Tammy wrote a letter to Larry on April 30, 2000, seeking to compromise. The letter lists the amounts Tammy had paid to Larry and shows deductions for the amounts Larry claimed Tammy owed him. The letter seeks repayment of the balance, nearly $8,000.

¶10    The letter reads, in part:

Dear Larry,
You said you would be fair with me. I pray you will. I am tired of playing this game and it is over for me. We have had no relationship for sometime and I fear friendship is no longer a possibility for we don't seem to possess the qualities of a true friendship.

Attached is an accounting of the dollars I have paid. I need to get the access. I really thought we had a lifetime commitment but now realize we don't. I signed over the RV because I trusted you. I always felt that it was half mine as you told me. I was afraid not to sign it over. I feared what you might do if I didn't. I didn't want to because it was my security for the excess funds I provided. I hate it has come to this, but I must protect my interest and not just write it off. I can't afford too [sic]. Please be fair to me, for I have been more than fair in my part and actually left out a lot of checks. The trips we took, I pretty much paid for. You said they were for me, but I think you enjoyed

4

them as well. The mileage you put on my car and your taking it was not a good thing. No one that cared for anyone would do that, but I'll let that go.

Tammy owed Larry:

| | | |
|---|---|---|
| Jack's debt I was unaware of: | $ 3,500 | |
| Your time and trouble | 5,000 | |
| Rent@500/month Aug, Sept, Nov | | 1,500 |
| Storage from 12/15-1/15 | 200 | |
| Loans | 1,500 | |
| | 400 | |
| | 1,000 | |
| Total | $13,100 | |

Paybacks from Tammy:

| | |
|---|---|
| Paid to you after I closed 12/18/99 | $15,000 |
| Down payment of rv ck#3731 8/25/99 | 1,200 |
| Deposit to your personal acct: | |
| ck#4061 12/9/99 | 300 |
| ck#4065 12-12-99 | 600 |
| . . . | |
| Larry's Glasses | 150 |
| | |
| Total | $21,033 |
| Less amount to Larry | 13,100 |
| | |
| Money owed to Tammy | $ 7,933 |

This amount is fair and in your favor. I sent Luke about 1,000 and a lot of other things I paid for I have not included. Please let me know how we can put this too [sic] rest. I am sorry it had to end like this. God knows I wish you all the best . . . Tammy

¶11 This letter is at the center of the evidentiary dispute before us. When defense counsel offered the letter into evidence, Tammy's counsel objected and sought voir dire on the document. During voir dire, Tammy testified that the letter was written as a compromise offer in an attempt to settle the debt claim. Accordingly, Tammy's counsel objected on the

5

grounds that the letter was inadmissible under Rule 408 of the Montana Rules of Evidence, which bars admission of evidence of or offers to compromise.

¶12 Larry's counsel responded by asserting that the letter was not an offer of settlement, but an accounting. Further, he argued, the accounting was made prior to any claim being filed against Larry, stating: "Rule 408 needs to be read together with Rule 8, which identifies what a claim is. And a claim, under Rule 8, is after an action has been filed. This [letter] predates the action by a year, predates the document which she is suing him on." Finally, counsel asserted that the letter was not being offered to show the amounts therein, but to impeach Tammy.

¶13 It is unclear which of the above arguments the district court found persuasive, but the letter was admitted.

## STANDARD OF REVIEW

¶14 Our standard of review of a district court's evidentiary rulings is abuse of discretion. *Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 43, 301 Mont. 240, ¶ 43, 8 P.3d 778, ¶ 43 (citing *Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 353, 916 P.2d 122, 128). "The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Jarvenpaa v. Glacier Elec. Co-Op., Inc.*, 1998 MT 306, ¶ 13, 292 Mont. 118, ¶ 13, 970 P.2d 84, ¶ 13.

DISCUSSION

¶15    **Did the District Court violate Rule 408, M.R.Evid., when it admitted Defendant's Exhibit A, a letter Tammy wrote to Larry seeking to settle their financial differences?**

¶16    To answer this question, we must address and resolve three preliminary inquiries:

(1) Was Tammy's letter an offer to compromise?

(2) To fall under Rule 408, must the letter have been written after a legal claim was filed in court?

(3) If the letter would otherwise be inadmissible under Rule 408, does it fall within one of the exceptions?

¶17    Rule 408, M.R.Evid., reads:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

¶18    First, based on our review of the record and the text of Tammy's letter to Larry, we conclude that the letter constitutes an offer of compromise. Several aspects of the letter support this conclusion. Tammy begins by asserting, "You said you would be fair with me. I pray you will." She writes, "Please be fair to me, for I have been more than fair in my part and actually left out a lot of checks." Tammy concludes the letter with "This amount is fair and in your favor." All of these statements indicate that she was presenting Larry with what she thought was a reasonable and fair settlement of the disputed debts between them. It only

7

stands to reason that if Tammy had been seeking to present a full accounting of the money that changed hands, rather than a settlement offer, she would not have left out any checks. Her statement that the accounting "is in your favor," makes it clear that Tammy was not presenting her own cut and dried figures, but was in fact trying to give Larry the benefit of the doubt on every claim he made and attempting to show that even granting Larry all those claims, he still owed her nearly $8,000.

¶19    Further evidence that Tammy was trying to give Larry the benefit of the doubt for the purpose of settling the dispute can be found in the first entry under the list of monies "Tammy owed Larry." The first line item is: "Jack's debt I was unaware of: $3,500." For the sake of compromise, Tammy credited Larry for this $3,500 debt, despite that she had never before known about it and did not, in fact, believe it was valid. (Tammy later introduced arguably compelling evidence to suggest that Larry fabricated this debt.)

¶20    We next turn to the question of whether an offer of compromise must occur after a formal claim has been filed in order to be excluded under Rule 408, M.R.Evid. Faced with a similar question in *Niles v. Big Sky Eyewear* (1989), 236 Mont. 455, 771 P.2d 114, overruled on other grounds by *Sacco v. High Country Independent Press, Inc.* (1995), 271 Mont. 209, 896 P.2d 411, we noted that Rule 408 "does not clarify whether litigation must be in progress before [the Rule] takes effect." *Niles*, 236 Mont. at 463, 771 P.2d at 118. In that case, we said, with respect to the timing of the compromise offer, "both parties had hired attorneys and a draft of the complaint had been sent to defendants' attorney. It was certainly clear at the time that Niles had a claim against the defendants." *Niles*, 236 Mont. at 463, 771

8

P.2d at 119. Therefore, we concluded that the offer of compromise was within the purview of Rule 408, M.R.Evid.

¶21　In this case, fewer than three months passed between the time Tammy wrote the letter of compromise and the time she filed the lawsuit. Tammy wrote the letter in question on April 30, 2000. On July 24, 2000, after Larry failed to respond, Tammy filed her complaint. While it is clear that Rule 408 should not reach into the remote past, shielding admission of documents prepared long prior to litigation, Tammy's offer of compromise–like the one in *Niles*–was issued near enough to the commencement of her lawsuit to suggest that it was the predicate to her last resort–litigation. Accordingly, under the facts presented here, we conclude that the letter falls within the purview of Rule 408, M.R.Evid.

¶22　Finally, we must consider whether this letter meets one of the exceptions to Rule 408, M.R.Evid. Rule 408 "does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." Larry's counsel asserted, among other things, that he sought admission of Tammy's April 30th letter not to show the amounts listed in the letter, but to impeach Tammy. If this claim could withstand scrutiny, the letter could possibly be admissible as "evidence otherwise discoverable" that was presented in the course of compromise negotiations.

¶23　Our review of the trial transcript, however, reveals that the defendant introduced Tammy's letter to support his argument that Tammy sought to compromise an obligation and not a loan. Defense counsel's cross-examination of Tammy focused on proving that the money she provided to Larry was not a loan. The following exchange is instructive:

9

Q (defense counsel O'Neill): . . . Now I'd like you to look down below to the paragraph that begins "Tammy owed Larry . . . "

A (Tammy): Uh-huh.

Q: Did you write that?

A: Yes, I did.

Q: And then I'd like you to look at the next paragraph saying "Paybacks from Tammy." Is that correct?

A: Yes.

Q: And then you wrote, "Paid to you after I closed 12/18/99." Did you write that?

A: Yes.

Q: You didn't write "loaned to you," did you?

A: What did you say? I'm sorry. I was looking at something else.

Q: You didn't write "loaned to you," you said "paid to you."

. . .

A: Yeah, whatever.

Q: So you're claiming you had a loan, but you're telling him that it's just money that you paid him back?

Defense counsel continued to press his assertion that Tammy's letter demonstrates the absence of a loan.

Q: And when you said, "Paid to you after I closed," you really meant "loaned to you"?

A: The $15,000, yes.

Q: Yeah, but there is no loan document, is there?

10

A: There is a copy of the cashier's check.

Q: But the cashier's check doesn't say "loan" on it, does it?

A: No.

Given this line of questioning, it is clear that Larry sought to use Tammy's letter to show that her claim of loan repayment was bogus, while his claim that she owed him the money outright was valid. By offering this letter into evidence, Larry sought to and succeeded in convincing the court that no loan was ever intended. He thus accomplished precisely what Rule 408 is designed to avoid: he tendered into evidence an offer to compromise a claim that is disputed as to validity or amount "in order to prove liability for or invalidity of the claim." Rule 408, M.R.Evid.

¶24 Accordingly, we conclude that the district court abused its discretion when it admitted Exhibit A, Tammy's April 30th letter to Larry. Moreover, because the District Court relied heavily on this improperly admitted evidence in concluding that Tammy presented contradictory testimony and was therefore not credible, we are compelled to conclude that this improper admission resulted in substantial injustice, requiring reversal.

¶25 We find the improper evidentiary ruling in this case dispositive, and thus we do not reach the second issue Tammy presents on appeal.

¶26 We therefore reverse the District Court's decision to admit Tammy's letter and order a new trial.

/S/ PATRICIA COTTER

We concur:

11

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM RICE

Chief Justice Karla M. Gray, dissenting.

¶27     I respectfully dissent from the Court's opinion.  It is my view that Tammy's letter was not an offer of compromise pursuant to Rule 408, M.R.Evid., and, further, that *Niles* actually supports the District Court's admission of the letter.  I would affirm.

¶28     Rule 408, M.R.Evid., does not apply to any and all "offers of compromise."  The Rule speaks only to offers or attempts to compromise "a claim" which "was disputed. . . ."  Thus, while the Court is correct that Tammy's letter related to "disputed debts" between herself and Larry, a letter trying to resolve a disputed debt between two people does not fall within the plain language of Rule 408 requiring exclusion of an offer of compromise of a disputed "claim."  In other words, "dispute"--as used in Rule 408--is not the equivalent of "claim."  To conclude otherwise, as the Court does in this case, is to essentially delete and render nugatory the word "claim" in the Rule.  It is not a court's job to omit language in making interpretations.  *See* § 1-2-101, MCA.  I conclude that Tammy's letter is not an offer to compromise a claim for purposes of Rule 408, M.R.Evid.

¶29     Nor do I agree with the Court that this case presents "the question of whether an offer of compromise must occur after a formal claim has been filed in order to be excluded under Rule 408, M.R.Evid."  *Niles* is clear that a legal claim need not be filed in a court to bring Rule 408 into play.  However, *Niles* also is clear that there must be "a claim," not merely a private dispute or an offer to compromise such a private dispute.  *Niles* states the relevant portion of Rule 408 as "offers or acceptances in compromise of a disputed claim" are not

13

admissible. *Niles*, 236 Mont. at 463, 771 P.2d at 118. Nothing in *Niles* supports the Court's determination here that a dispute is the equivalent of a disputed "claim."

¶30    *Niles* does hold that when "a claim" exists by a plaintiff against defendants, offers of compromise regarding that claim are within the purview of Rule 408. The decision clearly was premised on the specific facts of that case. Where both parties had hired attorneys and a draft of the complaint had been sent to defendants' counsel, "[i]t was certainly clear . . . that Niles had *a claim* against defendants." *Niles*, 236 Mont. at 463, 771 P.2d at 119 (emphasis added). I simply cannot agree with the Court that *Niles* can be stretched to cover this case simply because Tammy sued Larry approximately three months after her letter to him. None of the facts which led the *Niles* Court to conclude "a claim" existed is present in this case.

¶31    Finally, I do agree with the Court that "Rule 408 should not reach into the remote past[.]" It is my view, however, that the facts in *Niles* likely are the outer limit on what can fall within Rule 408, because an actual "claim" existed there. The same is not true here.

¶32    Most importantly, however, I believe the Court is doing trial courts and legal practitioners a grave disservice in its analysis of Rule 408. The issue of what constitutes an offer to compromise a claim for purposes of inadmissibility under Rule 408 is infrequently litigated--at least in this Court--and relatively well settled. The Court's opinion gives no guidance at all as to what "the remote past" might be. The opinion simply unsettles the law, rather than properly applying either the Rule or *Niles*.

¶33    I dissent.

/S/ KARLA M. GRAY

14